YVONNE ELLISON, Plaintiff-Appellant v. LUIS RAMOS, Defendant-Appellee

No. COA97-1417

(Filed 4 August 1998)

**1. Child Support, Custody, and Visitation— custody—stand-
ing—third party non-parent**

A third party who has no relationship with a child does not
have standing under N.C.G.S. § 50-13.1 to seek custody of a child
from a natural parent; however, a relationship in the nature of
parent and child, even in the absence of a biological relationship,
will suffice to support a finding of standing. Whether a lesser
relationship would also suffice is left to another day and this
holding in no way infringes upon the rule that where there is a
statute specific to a particular circumstance, that statute controls
over N.C.G.S. § 50-13.1(a)'s default rule.

**2. Child Support, Custody, and Visitation— custody—stand-
ing—third party—parent-child relationship**

Plaintiff had standing to bring an action for a determination
of custody where she alleged a relationship in the nature of a
parent-child relationship in that she was the only mother the
minor child had known and had mothered the child for the five
years she and the father had been intimately involved; the minor
child had lived with plaintiff after the parties separated and was
cared for by plaintiff until the father removed her from plaintiff's
care and took her to Puerto Rico, where he left her with her
maternal grandparents; and plaintiff was the responsible parent
in the rearing and caring of the child during the relationship with

the father, as she was the adult who took the minor child to her medical appointments, to school, attended teacher conferences, took the minor child for diabetic treatment and counseling, provided in-home medical care and treatment for her diabetes, taught her about caring for her diabetes, and bought all the child's necessities.

**3. Child Support, Custody and Visitation— custody—subject matter jurisdiction—home state**

The trial court had subject matter jurisdiction to determine the custody of a minor child where the child had resided in North Carolina with plaintiff up until June 1997, when the child was removed by defendant to Puerto Rico, and the action was filed in July of 1997. N.C.G.S. § 50A-3(a)(1).

**4. Child Support, Custody and Visitation— custody—natural parent and third party—constitutional status**

Plaintiff stated a claim for relief in an action for custody of a child with whom she had had a parent-child relationship even though she was not the natural mother where the father had placed his child in the custody of individuals who allegedly are not properly caring for the child's diabetes, resulting in hospitalization and potentially serious and permanent health consequences for the child, and the father had relinquished custody of his child to others on several occasions. These allegations support a conclusion that the father has acted in a manner inconsistent with his protected status as a parent.

Appeal by plaintiff from order entered 27 August 1997 by Judge Joseph Moody Buckner in Orange County District Court. Heard in the Court of Appeals 4 June 1998.

*Baddour & Milner, by Robert Terrell Milner, for plaintiff-appellant.*

*Epting and Hackney, by Karen Davidson, for defendant-appellee.*

WYNN, Judge.

Plaintiff Yvonne Ellison brought this action for the custody of minor child SolMarie Ramos in July 1997. Defendant Luis Ramos, the child's biological father, moved under Rule 12(b) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a

**ELLISON v. RAMOS**

[130 N.C. App. 389 (1998)]

claim. On 27 August 1997, the district court dismissed Ms. Ellison's complaint. She now appeals to this Court.

In reviewing the trial court's order that dismissed Ms. Ellison's complaint, we will first address the grounds given by the order for dismissal. (1) Whether Ms. Ellison has standing to bring this action and (2) whether the district court has subject matter jurisdiction. We will then conduct our normal review of a grant of a Rule 12(b) motion, inquiring whether the complaint states a claim for which relief may be granted. As we are reviewing a Rule 12(b) motion to dismiss, the pertinent facts are the allegations of Ms. Ellison's complaint, viewed in the light most favorable to her.

Both parties to this action are permanent residents of Orange County, North Carolina. Ms. Ellison has resided in Orange County for more than six months prior to the commencement of this action.

Ms. Ellison and Mr. Ramos are not and never were married, but they were "intimate companions" for five years. From July 1996 until June 1997, they resided together. Mr. Ramos is the father of a minor child, SolMarie Ramos. During the five years that the parties were intimate companions, Ms. Ellison "mothered the child."

SolMarie was born in Plantation Hospital, Florida, on 25 September 1987. Since SolMarie's birth, her biological mother has been in a comatose and vegetative state, and currently resides in a rehabilitation center. Mr. Ramos is the guardian of both the child and the child's biological mother.

From 1987 to 1991, SolMarie resided with her maternal grandmother in Florida. From 1991 to July 1995, SolMarie resided with Mr. Ramos in Florida. During that period, Ms. Ellison maintained her own apartment at which SolMarie resided approximately five days per week. SolMarie resided with Mr. Ramos and her paternal grandparents in Durham, North Carolina from July 1995 to July 1996, during which time she stayed at Ms. Ellison's residence approximately five days per week. From July 1996 to June 1997, SolMarie resided with Ms. Ellison in Chapel Hill, North Carolina.

The complaint further alleged that, after the parties separated, SolMarie lived with Ms. Ellison until Mr. Ramos removed her and took her to Puerto Rico. The minor child has told Ms. Ellison that she does not want to live in Puerto Rico with her grandparents.

The complaint further alleged that SolMarie is a diagnosed Type I diabetic, and that she is not receiving proper care in Puerto Rico, and her grandparents do not know how to provide the preventive care required by diabetics. The complaint went on to allege that the child was hospitalized in Puerto Rico as a result of not receiving proper care.

The complaint also alleged that "[d]uring [Ms. Ellison] and [Mr. Ramos]'s relationship, [Ms. Ellison] was the responsible parent in the rearing and caring for the minor child, as she was the adult who took the minor child to her medical appointments, to school, attended teacher conferences, took the minor child for diabetic treatment and counseling, provided in-home medical care and treatment for her diabetes, taught her about caring [for] her diabetes, and bought all the child's necessities, including clothing, school supplies, medical supplies, toys, books, etc." Further, the complaint alleged that Mr. Ramos "has never taken primary responsibility for [SolMarie], and rather than caring for her himself, has taken her to Puerto Rico to live with her grandparents, who are in their seventies, and who are, on information and belief, unable to provide for her and more specifically, unable to meet her special needs."

The complaint sought return of the child to the United States and to Ms. Ellison's care, and an award of custody to Ms. Ellison.

I.

[1] We first consider whether Ms. Ellison has standing to maintain this action. In the trial court's order, the trial court stated that "[p]ursuant to *Petersen v. Rogers* and *Price v. Howard* this Court finds as a matter of law that Plaintiff lacks standing to proceed . . . ." (citations omitted). We now interpret those cases and pertinent statutory law as they relate to the issue in this case and hold that, based on the Ms. Ellison's allegations, there is standing to bring this action.

Section 50-13.1 provides that "[a]ny parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided." N.C. Gen. Stat. § 50-13.1 (1995). Despite this broad language, in the context of a third party seeking custody of a child from a natural (biological) parent, our Supreme Court has indicated that there are limits on the "other persons" who can bring such an action. "N.C.G.S. § 50-13.1 was not intended to confer upon strangers the

right to bring custody or visitation actions against parents of children unrelated to such strangers. Such a right would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children." *Petersen v. Rogers*, 337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994).

In *Petersen*, the underlying action was a custody dispute between the biological parents and a couple who had attempted to adopt their child. *Id.* at 399-400, 445 S.E.2d at 902-03. When our Supreme Court revisited the issue of custody disputes between a natural parent and a third party in *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), the facts were similar to those in the present case.

In *Price*, from the time of the child's birth in 1986 the defendant mother had represented to the plaintiff that he was the child's father. The child believed that the plaintiff was her father. When the plaintiff and defendant separated in 1989, the child remained in the primary physical custody of the plaintiff. In the summer of 1991, defendant moved to another city while the child remained with the plaintiff. Approximately a year later, the defendant attempted to have the child's school records transferred. Upon learning of this, plaintiff filed an action for custody of the child. *Id.* at 70-71, 484 S.E.2d at 529.

In defendant's answer, she denied that plaintiff was the natural father of the child. A subsequent blood test excluded plaintiff as the natural father of the child. The trial court concluded that it was in the child's best interests that she remain in the primary physical custody of plaintiff, but concluded that under *Petersen v. Rogers*, it could not do so and therefore awarded defendant sole custody of the child. This Court, also following *Petersen*, affirmed that conclusion. *Id.* at 71-72, 484 S.E.2d at 529-30. Our Supreme Court reversed, for reasons that are more fully discussed *infra. See id.* at 84, 484 S.E.2d at 537. The plaintiff's standing to bring the custody action, however, does not appear to have been questioned in *Price*.

Although not involving a third party/natural parent custody issue, the scope of N.C. Gen. Stat. § 50-13.1(a)'s grant of standing to "other persons" to seek custody was recently considered in *Krauss v. Wayne County DSS*, 347 N.C. 371, 493 S.E.2d 428 (1997). The Supreme Court considered whether a natural parent whose parental rights have been terminated has standing as an "other person" under N.C. Gen. Stat. § 50-13.1(a) to seek custody of his children. *Id.* at 372, 493 S.E.2d at 429.

In determining that the natural parent was without standing, the Court noted that N.C. Gen. Stat. § 50-13.1(a) was a general statute that addressed all potential custody cases, and was controlling absent a statute that directly addressed a particular set of circumstances. *Id.* at 378, 493 S.E.2d at 433. However, the Court noted that "the broad grant of standing in N.C.G.S. § 50-13.1(a) does not convey an absolute right upon every person who allegedly has an interest in the child to assert custody." *Id.* at 379, 493 S.E.2d 433. After citing to *Petersen*, the Court went on to say "N.C.G.S. § 50-13.1(a) must operate within these [constitutional] confines and thereby promote the best interests of the child in all custody determinations." *Id.*

As Ms. Ellison's brief points out, our Supreme Court does not appear to have set forth any determinate standard for establishing when an "other person" has standing under N.C. Gen. Stat. § 50-13.1(a) to seek custody. Further, she asks us to "clarify the standing issue and in so doing draw a clear standard for cases wherein a custody dispute exists between a biological parent and a person biologically unrelated to the child." Accordingly, we now consider when a third party has standing to sue for custody.

*Petersen's* use of the term "stranger" to indicate those who do not have standing implies that the relationship between the third party and the child is the relevant consideration for the standing determination. *Petersen* and *Krauss* make it clear that a relationship based on a simple assertion of interest in a child's welfare is insufficient to establish standing. In particular, *Petersen's* use of the term "stranger" reinforces this view. Based on these cases, we conclude that a third party who has no relationship with a child does not have standing under N.C. Gen. Stat. § 50-13.1 to seek custody of a child from a natural parent.

These cases, however, do not resolve the question of what relationship is sufficient to support standing. In *Price*, we see an example of a relationship that apparently was sufficient to support standing on the part of the third party. Because of the mother's deception, the relationship was essentially that of parent and child. Unfortunately, the *Price* case did not discuss the standing question, which limits its precedential value on the issue. The absence of discussion of the issue would, however, indicate that if the issue had come up the relationship would have been sufficient to support standing. Accordingly, we hold that a relationship in the nature of a parent and child relationship, even in the absence of a biological relationship, will suffice to support a finding of standing.

ELLISON v. RAMOS

[130 N.C. App. 389 (1998)]

We note that our decision does not encompass all potential situations of third party/natural parent custody disputes. In this respect, it may fall short of plaintiff's apparent desire for us to establish a standing standard for all third party/natural parent custody cases. After due consideration, it would seem to us that at this time drawing a bright line for all such cases would be unwise. It may be that such a line should be drawn at some point in the future, after our courts have considered more cases in light of the *Petersen* and *Price* holdings, and we do not mean to foreclose such action. However, given the relative newness of the application of the standing doctrine in this area, there are a potentially vast number of unexplored fact patterns which could underlie such cases. As a result, any rule crafted now would face a serious risk of stumbling upon unforeseen pitfalls. Because the potential consequences to a child's welfare would be exceptionally serious, we decline to draw a generic bright line test. Instead, we confine our holding to an adjudication of the facts of the case before us: where a third party and a child have an established relationship in the nature of a parent-child relationship, the third party does have standing as an "other person" under N.C. Gen. Stat. § 50-13.1(a) to seek custody. Whether some lesser relationship would also suffice is a question left to another day. Furthermore, we also note that our holding should in no way infringe upon the rule that where there is a statute specific to a particular circumstance (such as cases where parental rights have been terminated), that statute controls over section 50-13.1(a)'s default rule.

**[2]** Having resolved the legal question presented, we now turn to its application to the facts in the present case. Under the Rules of Civil Procedure, a complaint need only contain "[a] short and plain statement . . . sufficiently particular to give the court and the parties notice of [what is] intended to be proved." N.C.R. Civ. P. 8(a)(1). Furthermore, "[n]o technical forms of pleading or motions are required." N.C.R. Civ. P. 8(e)(1). As we have consistently held, the policy behind notice pleading is to resolve controversies on the merits, after an opportunity for discovery, instead of resolving them based on the technicalities of pleading. *See, e.g., Smith v. City of Charlotte*, 79 N.C. App. 517, 528, 339 S.E.2d 844, 851 (1986). A statement of a claim is adequate if it gives sufficient notice of the basis for the claim to allow the adverse party to understand it and prepare a responsive pleading. *Pyco Supply Co., Inc. v. American Centennial Ins. Co.*, 321 N.C. 435, 442, 364 S.E.2d 380, 384 (1988). Finally, on a motion to dismiss the facts are viewed in the light most favorable to the non-movant, giving them the benefit of all plausible inferences.

Ms. Ellison's relevant allegations were that she "is the only mother the minor child has known and [that] she has mothered the child" for the five years she and Mr. Ramos were intimately involved. Further, "[a]fter the parties separated, the minor child lived with [Ms. Ellison] and was cared for by [Ms. Ellison] until [Mr. Ramos] removed her from [Ms. Ellison]'s care and took her to Puerto Rico, where he left her with her maternal grandparents." Finally, "[d]uring [Ms. Ellison] and [Mr. Ramos]'s relationship, [Ms. Ellison] was the responsible parent in the rearing and caring for the minor child, as she was the adult who took the minor child to her medical appointments, to school, attended teacher conferences, took the minor child for diabetic treatment and counseling, provided in-home medical care and treatment for her diabetes, taught her about caring [for] her diabetes, and bought all the child's necessities, including clothing, school supplies, medical supplies, toys, books, etc."

We conclude that Ms. Ellison's complaint alleges a relationship in the nature of a parent/child relationship. Accordingly, based on her complaint, Ms. Ellison has standing to bring an action for a determination of custody.

II.

[3] We now turn to the second basis the trial court gave for its ruling. "[T]he Court concludes as a matter of law that it does not have subject matter jurisdiction in order to determine the custody of said minor child." We hold that the district court does have jurisdiction to hear this matter.

N.C. Gen. Stat. § 50A-3 provides in pertinent part that

(a) A court of this State authorized to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

    (1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as a parent continues to live in this State . . . .

N.C. Gen. Stat. § 50A-3(a)(1) (1989). "Home state" is "the state in which the child immediately preceding the time involved lived with

the child's parents, a parent, or a person acting as a parent, for at least six consecutive months . . . ." N.C. Gen. Stat. § 50A-2(5) (1989).

As alleged by the complaint, filed 15 July 1997, up until June 1997 SolMarie resided with Ms. Ellison. Accordingly, we conclude that jurisdiction is proper in North Carolina.

III.

[4] Finally, we consider whether Ms. Ellison's complaint has alleged a cause of action for which relief may be granted. The major obstacle to Ms. Ellison's action is the constitutionally mandated presumption that, as between a natural parent and a third party, the natural parent should have custody.

Under N.C. Gen. Stat. § 50-13.2, "[a]n order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (1995). However, our Supreme Court held in *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994) that natural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children. As a result, in a custody dispute between a natural parent and a person other than the other natural parent, "absent a finding that [the natural] -parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." *Id.* at 403-04, 445 S.E.2d at 905.

Our Supreme Court returned to the subject of custody disputes between a natural parent and a third party in *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997) and refined the *Petersen* rule, holding that if a biological parent has taken actions "inconsistent with the constitutionally protected status of a natural parent," then custody between the natural parent and a person not the biological parent of the child should be determined under the "best interests" standard. *Id.* at 84, 484 S.E.2d at 537. The Court held as follows:

A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities that parent has assumed and is based on a presumption that he or she will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is incon-

sistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. However, conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights, would result in application of the "best interest of the child" test without offending the Due Process Clause. Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents. Where such conduct is properly found by the trier of fact, based on evidence in the record, custody should be determined by the "best interest of the child" test mandated by statute.

*Id.* at 79, 484 S.E.2d at 534-35 (citations omitted).

The *Price* Court then applied this holding to the facts before it, and concluded that "a period of voluntary nonparent custody" could constitute "conduct inconsistent with a parent's protected status" where the parent did not indicate to the nonparent that the period of nonparent custody was intended to be temporary. *Id.* at 82-83, 484 S.E.2d at 536-37. The Court remanded for further findings on the issue of whether defendant and plaintiff agreed that the surrender of custody was temporary. *Id.* at 84, 484 S.E.2d 537.

In the present case, we examine the allegations of the complaint to determine whether Mr. Ramos is entitled to the natural parent presumption. If the complaint contains no allegations that indicate that the natural parent has acted in a manner inconsistent with his or her protected status as a parent, the action is appropriately dismissed, as the natural parent presumption of *Petersen* and *Price* would defeat the claim as a matter of law.

The complaint alleges that Mr. Ramos placed his child in the custody of individuals (the grandparents) who allegedly are not properly caring for the child's diabetes, resulting in hospitalization and potentially serious and permanent health consequences for the child. Furthermore, the complaint alleged that Mr. Ramos has relinquished custody of his child to others, including Ms. Ellison, on several occasions. These allegations support a conclusion that Mr. Ramos has

acted in a manner inconsistent with his protected status as a parent. No other bar to the action appearing, we accordingly conclude that Ms. Ellison has stated a claim for relief.

In summary, the complaint has alleged both that Ms. Ellison has a relationship with the subject child and that Mr. Ramos has acted in a manner inconsistent with his constitutionally protected status as a parent. Accordingly, Ms. Ellison has standing to bring an action for a determination of custody and Mr. Ramos does not have the normal presumption provided to a biological parent. Therefore, we hold that the complaint makes out a case upon which relief may be granted. We further conclude that the district court has jurisdiction to hear this matter. Of course, whether the complaint's allegations may be proven remains for further proceedings.

For the reasons given above, the order dismissing Ms. Ellison's complaint is reversed and this matter is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Judges JOHN and McGEE concur.