DAVID E. BREWER AND WIFE, REE E. BREWER, PLAINTIFFS v. RICHARD EDWARD BREWER AND SONJA KAY DUKES ALDUCIN, DEFENDANTS

No. COA99-1042

(Filed 1 August 2000)

## 1. Appeal and Error— appealability—temporary child custody order—review in one year—no unresolved issues

An appeal was not interlocutory where the trial court issued a child custody order on 2 July 1999, noted that the order was "temporary," and decreed that it would review the order in "the summer of the year 2000." A year is too long a period to be considered "reasonably brief" in a case where there are no unresolved issues.

## 2. Child Support, Custody, and Visitation— custody—action between natural parent and uncle and aunt—*Petersen* presumption—findings of changed circumstances

A child custody order was remanded where defendants had two children; both defendants have a history of drug use and other criminal activity and defendant Alducin worked as a topless dancer; when defendant Alducin was arrested in Georgia for a probation violation in mid-1997; defendant Brewer moved back to North Carolina; the defendants entered into a consent order granting defendant Brewer custody of the two minor children in July of 1997; defendant Brewer kept the children until February of 1998, when he decided that his work schedule prevented him from being able to care for the children properly and allowed the children to live with plaintiffs, the paternal uncle and aunt of the

children; plaintiffs filed this action for permanent custody on 14 October 1998 and Alducin also filed for custody; and the court granted custody to Alducin. It would violate a natural parent's due process rights to deny her the presumption of *Petersen v. Rogers*, 337 N.C. 397, against a non-parent where the parent had voluntarily relinquished custody to the other parent, had never voluntarily or involuntarily relinquished custody to a non-parent, had never been adjudged unfit, and had never acted in a manner inconsistent with her protected parental status. However, to modify the custody order here, Alducin first had to show that there was a substantial change of circumstances affecting the welfare of the children, and, while the evidence shows that she made major lifestyle improvements, the trial court failed to make specific findings regarding any effect the change of circumstances had on the welfare of the children.

Judge LEWIS dissenting in part.

Appeal by plaintiffs from order entered 2 July 1999 by Judge Jimmy L. Myers in Davidson County District Court. Heard in the Court of Appeals 15 May 2000.

*Michelle D. Reingold and Theodore M. Molitoris for the plaintiff-appellants.*

*Jon W. Myers and The Law Offices of Rosalind Baker, by Rosalind Baker, for defendant-appellee Alducin.*

EAGLES, Chief Judge.

This case involves a custody dispute concerning two minor children who are four and six years of age respectively. The plaintiffs, David and Ree Brewer are the children's paternal uncle and aunt. Defendants Richard Brewer and Sonja Alducin are the children's estranged parents. Plaintiffs instituted this action in order to modify an earlier custody decree and obtain custody.

Defendants Brewer and Alducin lived together in the mid-1990's in both North Carolina and Georgia. During their relationship, they had two children. Those children are at the center of this custody dispute. The record indicates that both defendants have a history of drug use and other criminal activity during that time. The record also shows that defendant Alducin worked as a topless dancer while living with defendant Brewer. In mid-1997, defendant Alducin was arrested in Georgia for a probation violation. After defendant Alducin's arrest,

defendant Brewer took the children and moved back to North Carolina. In July of 1997, the defendants entered into a consent order granting defendant Brewer custody of the two minor children. The order granted defendant Alducin visitation rights and ordered her to pay $60.00 per week in child support.

Defendant Brewer kept the children until February of 1998. At that time, defendant Brewer decided that his work schedule prevented him from being able to care for the children properly. Accordingly, defendant Brewer unilaterally allowed the children to live with the plaintiffs.

On 14 October 1998, plaintiffs filed this action to obtain permanent legal custody of the children. The same day, 14 October 1998, the trial court granted the plaintiffs temporary custody in an *ex parte* order. In January of 1999, Alducin filed a motion to vacate the *ex parte* order and asked the court to grant custody of the children to her. On 2 July 1999 after a hearing, the trial court granted custody of the children to Alducin. In awarding her custody, the trial court relied heavily on Alducin's life transformation. In its order, the trial court found that Alducin had a reckless lifestyle prior to the entry of the 1997 consent order.

15. That the Defendant, Sonja Kay Dukes Alducin, admits to having used marijuana with the Defendant Richard Edward Brewer, but denies any use of drugs at this time.

. . . .

29. That the Defendant, Sonja Kay Dukes Alducin married at a very early age, fifteen. That she had a child Danielle, by her husband, Michael Dukes. That she had a child Siera, who was stillborn, during the course of her marriage to Michael Dukes. That they separated and that Michael Dukes voluntarily placed the minor child with his estranged wife, Defendant Alducin due to the fact that he believed that a young child should be with her mother. That there was an investigation by the Department of Family and Children's Services in the State of Georgia concerning deprivation of the minor child, Danielle. That the paternal grandparents of the minor child, Danielle sued in Juvenile court in the state of Georgia for custody of the minor child, Danielle. That the minor child, Danielle was placed with the paternal grandparents. That efforts were made unsuccessfully by the Department of Family and Children's Services in Georgia to reestablish (sic) of

the minor child, Danielle with the Defendant Alducin. That the minor child Danielle, was ultimately placed into the custody of Michael Dukes, who had married Christy. That Christy Dukes then sued for the adoption of the minor child, Danielle. That the Defendant, Sonja Kay Dukes Alducin, considering the situation felt like it was in the best interest of the minor child, Danielle to grow up in the home of Michael and Christy Dukes; and that she made the decision not to challenge the petition to terminate her parental rights or the petition to adopt and that Christy Dukes adopted the minor child Danielle.

30. That following the relationship and marriage to Michael Dukes, the Defendant, Sonja Kay Dukes Alducin, began living with the Defendant Richard E. Brewer, both in the State of Georgia and the State of North Carolina. That it was during this relationship that the two minor children, Kirstyn and Cainaan were born. . . . That the Defendants were never married. That during this time, the Defendant Alducin took a job as a topless dancer in clubs in the states of Georgia and North Carolina. That the Defendant, Alducin, was arrested in the state of Georgia for a probation violation and that she had not paid her fine for an emissions violation in driving without an operator's license. That the Defendant, Alducin, testified that she was placed in jail for fifteen days for the violation of her probation. During this time, the Defendant, Brewer took the minor children and moved back to North Carolina. That the Defendant, Alducin, entered into the consent order in Davidson County, North Carolina file number 97 CVD 1066 wherein she gave the Defendant, Brewer, custody of the minor children.

However, according to the trial court, Alducin matured and made positive lifestyle changes after the consent order.

5. That the Defendant, Sonja Kay Dukes Alducin, is now married to Paul Alducin and that it is more of a stable relationship giving both parents rights and responsibilities rather than a live-in situation.

. . . .

31. That since the entry of the consent order, the Defendant Alducin has turned her life around. That the Defendant Alducin has impressed the court that she has turned her life around. That the Defendant, Alducin has met and married Paul Alducin. That

the Defendant, Alducin's husband Paul has two associated degrees in the area of engineering and arts. That Paul Alducin has a job with Active Production and Design and is the Operations Manager. That Paul Alducin does lighting and sound for sporting events, concerts and political rallies. That Paul Alducin supervises nine employees and several dozen freelancers. That he and Defendant, Alducin, lived together prior to their marriage and they were married on September 5, 1998. That they had known each other for two years. That the Defendant, Alducin is currently working fifteen to twenty hours part time at Briarcliff Balloons, having been employed there for two months. That Briarcliff Balloons is a florist and decorations type business. That the Defendant, Alducin, had previously worked at Hyatt Regency in the valet car division but left that job in order to have time to visit her children in North Carolina.

. . . .

33. That the Defendant, Alducin and her husband have two vehicles, a Jeep Cherokee and a Ford Tempo which are paid in full. That they live in a two bedroom condo that is paid in full. That they have no significant debts. That they have health insurance and can obtain health insurance on the minor children if they obtain custody. That they live in a gated community. That Defendant Alducin's husband has a trust account that was set up by his father. That the Defendant, Alducin and her husband can draw upon the trust for additional income if necessary.

34. That the Defendant, Alducin, and her husband wish to place the minor children in private schools. That they do have a computer with Internet access in the home. That Paul Alducin's family has a mountain home in Rabon County, Georgia that they visit on a regular basis, about every other weekend. That the mountain home has four bedrooms, four bathrooms and a full basement residence. That they have two dogs.

35. That this court is impressed that when Paul Alducin was asked why he did want the minor children, that he stated that he loves them. That Paul Alducin's income is from $500.00 dollars to $700.00 dollars per week. That the Defendant Alducin's income is $175.00 dollars per week. That the Defendant Alducin will be twenty five years of age on June 12. That the Defendant Alducin has a tenth grade education having completed the ninth grade and quit in the tenth grade. That Defendant Alducin has been studying

to take the GED and will take the GED a week from Saturday. That the Defendant Alducin completed parenting classes several years ago during the time in which her minor child, Danielle, had been removed from her. That the Defendant Alducin admitted to having smoked marijuana and states that she has not smoked marijuana since having left the Defendant Richard E. Brewer.

. . . .

37. That the Defendant Alducin, has had a poor record with having these children in her custody, Danielle as well as Kirstyn and Cainaan. That she has presented evidence that she has turned her life around. That she is no longer a topless dancer. That she has a stable and loving marriage. That she has strong support from her husband and is financially in a good situation.

The trial court concluded that these lifestyle changes amounted to a substantial change in circumstances and made the following relevant conclusions of law.

2. That the proper standard of review for this matter is what is in the best interests of the minor children. In addition, there has also been a substantial and material change in circumstances since the entry of the consent order (97 CVD 1066) in that the Defendant, Alducin, has basically turned her life around in obtaining a stable marriage, stable residence and stable income.

3. That the Defendant, Alducin, is a fit and proper person to have the physical custody of the minor children and it is in the best interest of the minor children to be placed with Defendant Alducin.

The court entered the order on 2 July 1999 and noted that it was "temporary." Additionally, the court decreed that it would review the order in "the summer of the year 2000." Plaintiffs appeal from the order.

[1] The first issue we must address is whether the plaintiff's appeal is interlocutory. "An interlocutory order is one that does not determine the issues, but directs some further proceeding preliminary to a final decree." *Dunlap v. Dunlap*, 81 N.C. App. 675, 676, 344 S.E.2d 806, 807, *disc. review denied*, 318 N.C. 505, 349 S.E.2d 859 (1986). Normally, "a temporary child custody order is interlocutory and does not affect any substantial right . . . which cannot be protected by timely appeal from the trial court's ultimate disposition . . . on the merits." *Berkman v. Berkman*, 106 N.C. App. 701, 702, 417 S.E.2d 831,

832 (1992) (quoting *Dunlap*, 81 N.C. App. at 676, 344 S.E.2d at 807). Temporary custody orders resolve the issue of a party's right to custody pending the resolution of a claim for permanent custody. *Regan v. Smith*, 131 N.C. App. 851, 852, 509 S.E.2d 452, 454 (1998). The trial court's mere designation of an order as "temporary" is not sufficient to make the order interlocutory and nonappealable. Rather, an appeal from a temporary custody order is premature only if the trial court: (1) stated a clear and specific reconvening time in the order; and (2) the time interval between the two hearings was reasonably brief. *Cox v. Cox*, 133 N.C. App. 221, 233, 515 S.E.2d 61, 69 (1999). Likewise, an order is interlocutory if the trial court does not determine all issues prior to appeal. *Id.*

We hold that the order here is not interlocutory because the period between the hearings was not reasonably brief. The present order does set a specific reconvening date, the summer of 2000. However, the trial court made its decision in July of 1999. Therefore, the set time between hearings could amount to over a year. Contrary to defendant Alducin's contentions, this is not a reasonably brief period of time. Additionally, this is not a case where the trial court has not yet decided all issues. *See id.* Indeed, the court resolved every issue dealing with custody in its July 1999 order. The court did not leave any question open for further review when it concluded that it was in the children's best interests to remain with their mother. The court then allowed the children to live with Alducin for a full year before it will even begin to reconsider the issue. Accordingly, we hold that this order is not "temporary," despite its label.

Defendant Alducin correctly points to cases where this Court has held extended periods of time to be "reasonably brief." However, none of those cases involve a situation where the time between hearings was in excess of a year. *See Dunlap*, 81 N.C. App. at 676, 344 S.E.2d at 807 (holding that an appeal is premature where the order provided for temporary custody pending a hearing date set three months later). While we certainly do not want to encourage piecemeal appeals, a year is too long a period to be considered as "reasonably brief," in a case where there are no unresolved issues. Therefore, we will consider the merits of the case.

[2] We must first consider the effect of the Supreme Court's decision in *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994). In *Petersen*, our Supreme Court held that "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the

constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail" in a dispute with a non-parent. *Id.* at 403-04, 445 S.E.2d at 905. This Court based this principle on a presumption that a fit parent will act in the best interests of his or her child. *Price v. Howard,* 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997). In *Price,* the Supreme Court expanded on what constitutes unfitness or neglect by holding that conduct inconsistent with a parent's constitutionally protected status would lead to the application of the best interests of the child standard. *Id.* Therefore, in custody disputes between parents and non-parents, our Supreme Court has disavowed the best interests and welfare analysis. *Lambert v. Riddick,* 120 N.C. App. 480, 482, 462 S.E.2d 835, 836 (1995). However, where a trial court determines that a parent is unfit, has neglected the child, or acted inconsistently with the parent's protected interest, the best interests of the child test would apply. *Price,* 346 N.C. at 79, 484 S.E.2d at 534.

In subsequent cases, this Court has carefully applied *Peterson. See Bivens v. Cottle,* 120 N.C. App. 467, 462 S.E.2d 829 (1995), appeal dismissed, 346 N.C. 270, 485 S.E.2d 296 (1997); *Lambert v. Riddick,* 120 N.C. App. 480, 462 S.E.2d 835 (1995); *Speaks v. Fanek,* 122 N.C. App. 389, 470 S.E.2d 82 (1996). In the *Bivens* line of cases, this Court stated that *Peterson* only applies to an initial custody determination. Since those cases all involved modification of custody orders, we held there that the moving party parents had to show (1) a substantial change of circumstances affecting the welfare of the child and (2) that a change would be in the child's best interests. *Id.* According to the *Bivens* line of cases, "there are no exceptions in North Carolina law to the requirement that a change in circumstances be shown before a custody decree may be modified." *Bivens,* 120 N.C. App. at 469, 462 S.E.2d at 831. Because the trial court in those cases relied on *Petersen,* this Court remanded for the court to make findings whether the parent had shown a substantial change of circumstances affecting the welfare of the child. *See Bivens,* 120 N.C. App. at 470, 462 S.E.2d at 831; *Speaks,* 122 N.C. App. at 391, 470 S.E.2d at 84.

Notably, a concurring opinion in *Bivens,* questioned whether the majority had decided whether *Petersen* should apply if the parents made a showing of a substantial change in circumstances.

I agree that any movant (including a natural parent) in a section 50-13.7(a) child custody modification hearing is required to first show a substantial change in circumstances affecting the welfare

of the child (since the prior order of custody). *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 77, 418 S.E.2d 675, 678 (1992). If this showing is made, the trial court is required to enter an order of custody that is in the best interest of the child. *Id.* In making this best interest determination, is the natural parent entitled to a custody order unless the nonmovant shows that the parent is unfit? . . . Under the majority's construction of *Petersen* the answer is less clear and **indeed the majority does not reach that issue.** (Emphasis added).

*Bivens*, 120 N.C. App. at 470, 462 S.E.2d at 831 (Greene, J., concurring). Despite this concurring opinion, it is apparent that those decisions indicated that *Petersen* did not apply to those particular modification proceedings.

To understand the *Bivens* cases and our decision here, it is necessary to have a firm grasp on the facts of the *Bivens* decisions. Those cases reveal a common fact pattern whereby the natural parents were seeking to modify an order granting custody to a non-parent. *Bivens*, 120 N.C. App at 468, 462 S.E.2d at 830 (mother seeking to retain custody from order awarding children to maternal grandparents); *Speaks*, 122 N.C. App. at 389, 470 S.E.2d at 83 (parents seeking to retain custody after they had voluntarily relinquished legal custody to non-parents); *Lambert*, 120 N.C. App. at 481, 462 S.E.2d at 835-36 (dealt with an initial custody dispute between a parent and non-parent and merely stated proposition). Therefore, in those cases, the trial court awarded the non-parents custody either because the natural parents voluntarily surrendered custody of the children in a consent order or the court removed children from the parents' custody by order. In those cases, (unlike the instant case), a court would have already judicially determined that the best interests of the child lay with the non-parent third parties. The implication from *Bivens* and *Speaks* is that a parent loses her *Petersen* presumption if she loses custody to a non-party in a court proceeding or consent order. To hold otherwise, would ease the burden of proof on a parent in a modification proceeding who had lost custody to a non-parent in a prior proceeding. Therefore, the natural parent under the protection of *Petersen* could modify the custody order by simply showing fitness. This Court correctly rejected that reasoning by requiring that the parent who had lost custody to a non-parent show that a substantial change of circumstances had occurred and that a change would now be in the child's best interests.

In contrast to the *Bivens* cases, the instant case does not present a question where the moving parent either voluntarily or involuntarily lost custody to a non-parent third party. Alducin never surrendered custody of her children to the non-parent plaintiffs. The record reveals that Alducin, through no fault of her own was unaware where the children were. Additionally, no court has ordered that it would be in the children's best interests to live in the plaintiffs' custody. Instead, Alducin voluntarily relinquished custody to the other natural parent, defendant Brewer. Further, a court has never concluded that Alducin was unfit, neglected her children, or acted inconsistently with her parental status.

These factual differences require a different analysis and result than the *Bivens* line of cases. We now hold that the restriction that *Bivens* places on *Petersen* does not bind us on these facts. First, we agree with *Bivens* in so far as it requires a moving party to show a substantial change of circumstances affecting the welfare of the child in order to modify a custody order. *Bivens*, 120 N.C. App. at 469, 462 S.E.2d at 831. This is true whether the moving party is a parent or a non-parent. However, we differ from *Bivens* in that a natural parent should maintain her *Petersen* presumption against a non-parent where that parent has voluntarily relinquished custody to the other parent and has never been adjudicated unfit. To hold otherwise would violate a parent's due process rights to care, custody and control of their child. The U.S. Constitution protects a parent's interest in companionship, custody, care and control of his or her child. *Price*, 346 N.C. at 79, 484 S.E.2d at 534. Absent a finding of unfitness or neglect by the natural parent, a best interest of the child test would violate the parent's constitutional rights. *Id.* The U.S. Supreme Court has recently reaffirmed these principles in *Troxel v. Granville*, —— U.S. ——, —— L.Ed.2d —— (2000). In *Troxel*, the U.S. Supreme Court stated that "the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* According to the Court these rights cannot be doubted. *Id.* Further,

> [t]he law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience and capacity for judgment required for making life's difficult decisions. More important, historically, it has recognized the natural bonds of affection lead parents to act in the best interests of their children. . . . Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit) there will normally be no reason for

the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of the parent's children.

*Id.* (Internal citations omitted).

Accordingly, we hold that it would violate a natural parent's due process rights to deny her the *Petersen* presumption against a non-parent where the parent had voluntarily relinquished custody to the other parent, had never voluntarily or involuntarily relinquished custody to a non-parent, had never been adjudged unfit, and had never acted in a manner inconsistent with her protected parental status. To modify the custody order here, Alducin first has to show that there has been a substantial change of circumstances affecting the welfare of the children. **If** she meets that burden, she is then entitled to a *Petersen* presumption against the plaintiffs so long as there is no finding that she was unfit, neglected her children, or acted inconsistent with her parental rights.

We note that our holding here is limited strictly to the facts presented by this case. As we have stated previously, cases in this area present a vast number of unforeseen fact patterns. *Ellison v. Ramos*, 130 N.C. App. 389, 395, 502 S.E.2d 891, 894-95, *disc. review denied*, 349 N.C. 356, 517 S.E.2d 891 (1998). Any bright-line rule would undoubtedly face a serious risk of stumbling against an unforeseen situation. *Id.* Therefore, as to this factual situation we hold that a parent who voluntarily gave custody to the other parent and has never been adjudged unfit does not lose her *Petersen* presumption against a non-parent third party so long as the non-parent third party does not have court-ordered custody. Of course, the natural parent could also lose the protection of *Petersen* by acting in a manner inconsistent with her parental status, being unfit or neglecting her child's welfare.

Based on that standard, we will now address this case. In order to modify a child custody order, the moving party must show that there has been a substantial change of circumstances affecting the welfare of the child. *Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). The change in circumstances does not have to be adverse. *Id.* "[A] showing of a change in circumstances that is, or is likely to be beneficial to the child may also warrant a change in custody." *Id.* at 620, 501 S.E.2d at 900.

The plaintiff presented the following evidence of changed circumstances at the hearing. Prior to the entry of the 1997 custody

**BREWER v. BREWER**

[139 N.C. App. 222 (2000)]

order, Alducin had a troubling lifestyle. She was a drug user and engaged in other criminal activity. She did not have a stable job and when she did work, she worked as a topless dancer. However, after entering the consent order with defendant Brewer, Alducin made substantial lifestyle improvements. She stopped using drugs and married her current husband. She obtained stable employment, attended parenting classes, and at the time of the order at issue was preparing to obtain her G.E.D. The record shows that her husband was financially stable, had steady employment and showed affection for the children. These facts show that Alducin has made major lifestyle improvements and constitute a substantial change in circumstances.

However, the trial court failed to make specific findings regarding any effect the change of circumstances had on the welfare of the children. *See Evans v. Evans*, 138 N.C. App. 135, 530 S.E.2d 576 (2000); *Browning v. Helff*, 136 N.C. App. 420, 524 S.E.2d 95, 98 (2000). Further, we cannot construe any of the trial court's findings as determinations that the change affected the children's welfare. The trial court did find that Alducin could now provide the children with the opportunity of private school, insurance, a computer, and a stable home life. However, the court does not make findings how those results affect the children's physical and emotional well-being. Therefore, we remand this matter to the trial court for findings as to how the relevant change in circumstances affected the children's well-being.

We note that the trial court relied solely on the mother's lifestyle change as the substantial change in circumstances. On remand, the trial court may also consider the fact that defendant Brewer gave up his children to the plaintiffs apparently without Alducin's knowledge. These facts may also amount to a substantial change affecting the children's welfare.

Reversed and remanded.

Judge EDMUNDS concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting in part.

I respectfully dissent from that portion of the majority's opinion concluding the trial judge made insufficient findings of fact with

respect to the effect of the changed circumstances on the children's welfare. There is no question that any change of circumstances must actually or potentially affect the welfare of the child before a court may consider modifying custody. *Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998). I agree with the majority that the trial judge should make findings as to any such effects, but I believe the court's findings with respect to Mrs. Alducin's drastically-reformed lifestyle were sufficiently detailed and specific to show it properly considered such effects.

Here, the trial court's findings with respect to Mrs. Alducin's reformation can be summarized as follows: (1) at the time of the original custody order, Mrs. Alducin was unmarried and living alone, whereas she is now remarried and living in a more stable, two-parent household; (2) Mrs. Alducin used to have "a poor record" with respect to the custodial care of her children, but has now completed parenting classes; (3) her child Cainaan presently has no health or medical insurance coverage, but Mrs. Alducin would now be able to provide him with such coverage; and (4) Mrs. Alducin used to smoke marijuana, but has not done so since the original order. Although the trial court did not explicitly find that any of these changes would have an effect on the children's welfare, the clear import of the above findings is that Mrs. Alducin's reformed lifestyle would indeed affect their welfare—emotionally, medically, and financially.

Though we in the appellate courts should ensure that trial judges follow the applicable law and make sufficient findings to demonstrate that they did so, our role of judicial oversight should not be so rigid as to bog down trial dockets with remanded cases simply because their orders failed to make explicit findings that are clearly implied within their other findings. Essentially, the majority has remanded this case to the trial court so that one sentence can be added to the trial judge's findings, namely that Mrs. Alducin's reformed lifestyle will affect the children's welfare emotionally, medically, and financially. In light of the findings the trial judge did make, and the clear import of those findings, I believe the learned district court judge has done enough to make his extensive work clear to all parties. I say his work is done.