ARROWOOD, Judge, dissenting.
The majority holds that the trial court did not err by dismissing Emily Susanna Chavez ("plaintiff")'s complaint for shared custody of Serena Sebring Wadlington and Joseph Fitzgerald Wadlington (collectively, "defendants")'s *297 biological children pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure because it concluded plaintiff lacked standing to seek custody of C.A.W. I respectfully dissent.
I believe plaintiff alleged sufficient facts to have standing as to C.A.W. However, I offer no opinion as to whether she may ultimately prevail. "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss. Our review of an order granting a Rule 12(b)(1) motion to dismiss is de novo ." Moriggia v. Castelo , --- N.C. App. ----, ----, 805 S.E.2d 378, 384 (2017) (citation and internal quotation marks omitted). In determining standing, our Court "may consider matters outside the pleadings."
*552 Harris v. Matthews , 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007) (citations omitted).
Standing for an individual to bring an action for child custody is governed by N.C. Gen. Stat. § 50-13.1(a), which provides that "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided." N.C. Gen. Stat. § 50-13.1(a) (2017). However, "there are limits on the 'other persons' who can bring such an action. A conclusion otherwise would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children." Mason v. Dwinnell, 190 N.C. App. 209, 219, 660 S.E.2d 58, 65 (2008) (internal quotation marks and citation omitted).
In Ellison v. Ramos , 130 N.C. App. 389, 502 S.E.2d 891 (1998), our Court held "that a relationship in the nature of a parent and child relationship, even in the absence of a biological relationship, will suffice to support a finding of standing." Id. at 394, 502 S.E.2d at 894. Subsequently, our General Assembly mandated in N.C. Gen. Stat. § 50-13.2(a) "that disputes over custody be resolved solely by application of the 'best interest of the child' standard." Estroff v. Chatterjee , 190 N.C. App. 61, 63, 660 S.E.2d 73, 75 (2008). However, before the best interest of the child standard can be used as between a legal parent and a third party, "our federal and state constitutions, as construed by the United States and North Carolina Supreme Courts" require that "the evidence establishes that the legal parent acted in a manner inconsistent with his or her constitutionally-protected status as a parent." Id. at 63-64, 660 S.E.2d at 75 (citing Price v. Howard , 346 N.C. 68, 484 S.E.2d 528 (1997) ). Thus, a party seeking custody must now "allege facts demonstrating a sufficient relationship with the child and then must demonstrate that the parent has acted in a manner inconsistent with his or her protected status as a parent." Moriggia , --- N.C. App. at ----, 805 S.E.2d at 385. Here, the majority holds that plaintiff failed to both (1) sufficiently allege a parent-child relationship with the children, and (2) allege facts sufficient to overcome the natural parents' constitutionally protected status. I disagree.
I. Parent-Child Relationship
The majority first holds that plaintiff's allegations, taken as true and viewed in the light most favorable to the plaintiff, demonstrate that she had a parent-child relationship with the children while in a relationship with defendant mother, but that plaintiff's relationship with the children ended in July 2015 when she evicted them and their mother from the *553 residence, and, thus, plaintiff did not sufficiently allege a parent-child relationship. Although our Court is bound by unchallenged findings of fact 20 and 24, that the plaintiff's relationship with the children ended in July 2015, this does not prevent plaintiff from establishing a parent-child relationship for the purposes of standing in a child custody case. We must also consider the parties' actions during the relationship of plaintiff and defendant mother, as:
the actions and intentions during the relationship of the parties, during the planning of the family, and before the estrangement carry more weight than those at the end of the relationship since ... "[i]ntentions after the ending of the relationship between the parties are not relevant because the right of the legal parent does not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after *298 the party's separation she regretted having done so."
Moriggia , --- N.C. App. at ----, 805 S.E.2d at 387 (quoting Estroff , 190 N.C. App. at 70-71, 660 S.E.2d at 79 (citation and internal quotation marks omitted) ). Although Moriggia considers whether the natural parent acted inconsistently with his or her paternal rights so as to establish standing, I would hold that the fact that a legal parent does not have the right to erase a parent-child relationship between her partner and her child which she created and fostered during the relationship is also relevant here.
Here, plaintiff alleges, and the trial court found as fact, that she was in a long-term, committed, and exclusive relationship with defendant mother for approximately seven years, making public vows of commitment in May 2012. Plaintiff alleged she was "involved in the care, upbringing and development of the minor children throughout her relationship with" defendant mother, and that it was defendant mother's intent to create a permanent relationship between plaintiff and the children. She also alleged that she "and [d]efendant [m]other publically held themselves out as the ... children's parents[,]" and defendant mother delegated parental responsibilities to plaintiff, including: taking the children to appointments and activities, assisting with schoolwork, providing emotional stability, having decision-making authority regarding the children, and purchasing necessities for the children. I would hold that these allegations, taken as true and in the light most favorable to plaintiff, are sufficient to establish plaintiff had a parent-child relationship with defendants' children.
*554 Nonetheless, the majority holds that these allegations are irrelevant to our inquiry because "standing is measured at the time the pleadings are filed," see Quesinberry v. Quesinberry , 196 N.C. App. 118, 123, 674 S.E.2d 775, 778 (2009), and the trial court found plaintiff's relationship with the children ended in July 2015 once they were evicted from plaintiff's house. However, considering whether plaintiff had a parent-child relationship with defendants' children before plaintiff's separation from defendant is not contrary to the principle that "standing is measured at the time the pleadings are filed[,]" id ., as "the right of the legal parent does not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the party's separation she regretted having done so." Moriggia , --- N.C. App. at ----, 805 S.E.2d at 387 (citation, internal quotation marks, and emphasis omitted).
Accordingly, I would hold that defendant mother cannot erase the parent-child relationship by removing the children from plaintiff's life after her separation from plaintiff. Therefore, our Court should also consider the parent-child relationship that existed before the termination of plaintiff and defendant mother's relationship led to the eviction of defendant and the children from plaintiff's house and plaintiff's inability to maintain her relationship with the children. As a result, I would hold that plaintiff's allegations, taken as true and in the light most favorable to plaintiff, are sufficient to establish plaintiff had a parent-child relationship with defendants' children.
II. Actions Inconsistent with Parental Rights
Although plaintiff incorrectly alleges on appeal that she does not need to allege that defendants acted inconsistently with their parental rights to establish standing, she also argues in the alternative that her allegations demonstrate that defendants acted inconsistently with their protected status as a parent by relinquishing their right to exclusive care and control of the children by granting plaintiff parental rights when defendant mother voluntarily and intentionally created a family unit and "a parent-like relationship between [p]laintiff and the" children.
In Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994), our Supreme Court held "that absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail" in a dispute with a non-parent. Id. at 403-404, 445 S.E.2d at 905. However, "[i]n Price , the Supreme Court expanded on what constitutes unfitness or neglect by holding that conduct *299 inconsistent *555 with a parent's constitutionally protected status would lead to the application of the best interests of the child standard." Brewer v. Brewer , 139 N.C. App. 222, 229, 533 S.E.2d 541, 547 (2000) (citing Price , 346 N.C. at 79, 484 S.E.2d at 534 ). Our Court has held that a parent acts inconsistently with his or her protected status as a parent by relinquishing the right to exclusive care and control of a child by granting parental status to a third party. Estroff , 190 N.C. App. at 70, 660 S.E.2d at 78 (citation omitted). Thus, when a legal parent invites a third party into a child's life and cedes to the third party a significant amount of parental responsibility, the parent cannot later "assert those rights in order to unilaterally alter the relationship between her child and the person whom she transformed into a parent." Id. (citation omitted).
Here, plaintiff's allegations and the trial court's uncontested findings of fact tend to show that plaintiff and defendant mother were in a committed relationship and raised defendant mother's children together for five years. They lived as a family unit until the relationship ended. When they ultimately separated, defendant mother's intentions changed, but she had already created a family unit that included plaintiff. Thus, I would hold plaintiff alleged facts sufficient to overcome the mother's Petersen presumption.
However, the majority holds that even assuming arguendo , plaintiff alleged facts sufficient to overcome defendant mother's Petersen presumption, the trial court found that plaintiff's complaint does not allege the father acted inconsistently with his protected status; thus, the father's rights remain superior to those of a non-parent. The majority relies on Brewer to support this holding.
In Brewer , the biological father of two children entered into a consent order with the children's biological mother that granted him custody. Brewer , 139 N.C. App. at 224, 533 S.E.2d at 544. Thereafter, the father unilaterally allowed the children to live with their paternal aunt and uncle. Id. The biological mother was unaware of this change. Id. at 231, 533 S.E.2d at 548. Subsequently, the paternal aunt and uncle filed an action to obtain permanent legal custody of the children. Id. at 224, 533 S.E.2d at 544. The trial court granted the paternal aunt and uncle temporary custody in an ex parte order. Id. The biological mother then moved to vacate this order, asking the court to grant her custody of the children. Id. The court awarded the biological mother custody of the children. Id. The paternal aunt and uncle appealed. Id.
In reviewing the trial court's decision, the Court was careful to distinguish the case from cases where "a parent loses her Petersen *556 presumption if she loses custody to a non-party in a court proceeding or consent order." Id. at 230, 533 S.E.2d at 548. Moreover, the Court specified the case did "not present a question where the moving parent either voluntarily or involuntarily lost custody to a non-parent third party. [The biological mother] never surrendered custody of her children to the non-parent plaintiffs ... [she], through no fault of her own was unaware where the children were." Id. at 231, 533 S.E.2d at 548.
In light of the circumstances before it, the Court held: a natural parent should maintain her " Petersen presumption against a non-parent where the parent had voluntarily relinquished custody to the other parent, had never voluntarily or involuntarily relinquished custody to a non-parent, had never been adjudged unfit, and had never acted in a manner inconsistent with her protected parental status." Id. at 232, 533 S.E.2d at 548. The Court then specifically emphasized this holding "is limited strictly to the facts presented by this case." Id. at 232, 533 S.E.2d at 549 (emphasis added).
Our Court's caution in limiting Brewer is well-justified, given that "cases in this area present a vast number of unforeseen fact patterns." Id. (citing Ellison , 130 N.C. App. at 395, 502 S.E.2d at 894-95 ). Thus, I believe that relying on Brewer in a case where the defendant father saw the children regularly and "never abandoned" the children during the course of defendant mother's relationship with plaintiff impermissibly expands Brewer , a case where the biological mother was unaware the children were living with non-parents through no fault of her own.
*300 Admittedly, the complaint in this case fails to specifically allege that defendant father abrogated his constitutionally protected status. However, our Court may look outside the pleadings in reviewing a Rule 12(b)(1) ruling. Harris , 361 N.C. at 271, 643 S.E.2d at 570 ; see Cunningham v. Selman , 201 N.C. App. 270, 280, 689 S.E.2d 517, 524 (2009) ("Unlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation of a Rule 12(b)(1) motion to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." (citation, quotation marks, and alterations omitted) ).
Here, the trial court held an evidentiary hearing, during which plaintiff repeatedly contended that both parents abrogated their constitutionally protected status by granting her the status of a parent. The trial court called defendant mother to the stand on the issue of standing. Defendant mother testified that she and plaintiff co-parented the children for five years, and that defendant father "had a good relationship with the children" at all times. She stated he "is the other primary *557 parent to them" and saw the children regularly while she was in a relationship with plaintiff. Thus, the record makes it evident that defendant father was in a position to know that defendant mother held plaintiff out as a parent, and also intentionally created a parent-child relationship between plaintiff and the children.
This evidence and plaintiff's allegations at the hearing undermine a key finding of fact in the trial court's order that "[p]laintiff did not and does not allege that Father has acted in a manner inconsistent with his constitutionally protected status as a parent." Moreover, I would hold that the pleadings and defendant mother's testimony was sufficient to show by clear and convincing evidence that defendant father acted in a manner inconsistent with his constitutionally protected status because, unlike Brewer , he was in circumstances where it was apparent defendant mother created a parent-child relationship with plaintiff and his children. Despite this change, defendant father never took issue with the custody arrangement, sharing custody "in a peaceful and cooperative manner" with defendant mother since their separation.
Based on the circumstances before the Court, I would hold plaintiff had standing to seek custody of C.A.W. Accordingly, I would reverse the trial court's order dismissing for lack of subject matter jurisdiction.