MARVILYN B. BOHANNAN AND CECIL L. BOHANNAN, JR., PLAINTIFFS JOHNNY BRANCH AND KRISTIN BRADLEY BRANCH, PLAINTIFF INTERVENORS V. EMILY M. McMANAWAY AND JOHNNIE MICHAEL MURRAY, DEFENDANTS

No. COA09-887

(Filed 21 December 2010)

**1. Child Custody and Support— motion to set aside custody order —abuse of discretion—motion to set aside consent order**

The trial court abused its discretion by denying defendant's Rule 60(b) motion to set aside a child custody order where the trial court failed to hear any testimony in the matter. Defendant's failure to appear at the custody hearing did not obviate the need for a hearing on the issue of custody. Furthermore, the Court of Appeals strongly urged the trial court to consider on remand defendant's arguments concerning the validity of a previously entered consent order.

**2. Child Custody and Support— motion to intervene— wrongfully granted**

The trial court erred in granting plaintiff-intervenors' motion to intervene in a child custody action because they failed to make a sufficient showing to support a determination of standing in the matter. Moreover, even if plaintiff-intervenors had standing, their motion did not contain grounds for modification of the custody order nor did it allege any changes in circumstances affecting the welfare of the child.

**3. Jurisdiction— subject matter jurisdiction—order from another state**

The trial court did not err by failing to dismiss a child custody action *ex mero motu*. The Nevada district court concluded that North Carolina had jurisdiction, and the Court of Appeals cannot disturb an order from another state's district court, even if it is based on an order from this State that may be void.

Appeal by defendant Emily M..McManaway from orders entered 16 January 2009, 29 January 2009, and 7 April 2009 by Judge Joseph M. Buckner in Orange County Superior Court. Heard in the Court of Appeals 27 January 2010.

*Coleman, Gledhill, Hargrave & Peek P.C., by Leigh Ann Peek, for plaintiffs and plaintiff-interveners.*

*Betsy J. Wolfenden for defendant Emily M. McManaway.*

ELMORE, Judge.

Emily McManaway (defendant) is the mother of child Bobby,[1] and defendant Johnny Murray is the putative father. Bobby was born 30 August 2003 in Nevada, but defendant brought him to North Carolina on 16 September 2003. Cecil Bohannan is defendant's brother. Cecil Bohannan and his wife, Marvilyn (together, plaintiffs), took physical custody of Bobby. Defendant then returned to Nevada without Bobby. In March 2004, defendant asked plaintiffs to return Bobby to her in Nevada, which they did. Nevada Protective Services took custody of Bobby on 5 March 2006. After a hearing in Nevada, plaintiffs took custody of Bobby and returned to North Carolina. Plaintiffs arranged for plaintiff-interveners Johnny and Kristen Branch to care for Bobby. Plaintiffs then filed a complaint seeking custody of Bobby. This appeal, for the most part, stems from that complaint.

**Background**

"The procedural quagmire that confronts us here is best unraveled by a chronological account of the proceedings in the trial court." *Bailey v. Gooding*, 301 N.C. 205, 206, 270 S.E.2d 431, 432 (1980).

On 14 November 2003, a consent order was filed in Orange County. The consent order had file number 03 CVD 2183 and stated that the cause came "on to be heard . . . during a regularly scheduled session of Civil District Court" and, "at the call of the calendar for trial, counsel indicated to the court that an Agreement with regard to the issues of child custody had been executed and was ready for entry of judgment[.]" The consent order decreed that Bobby would be "placed in the temporary joint legal and physical custody of Emily M. McManaway and Marvilyn and Cecil Bohannan Jr.," and Bobby's primary residence would be with plaintiffs, with whom he had lived since 16 September 2003. The consent order also decreed that plaintiffs would "be responsible for providing health insurance for the minor child who is the subject of this action, and shall be vested with the authority to authorize and commission any and all health or medical care services as they deem fit and proper." Both plaintiffs and defend-

---

1. "Bobby" is not the child's real name.

ant signed the consent order before notaries. The order contains the signature of District Court Judge M. Patricia DeVine.

Plaintiffs filed their complaint on 13 October 2006 in Orange County District Court. According to the complaint, the Court in Clark County, Nevada, and the Court in Orange County participated in a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) telephonic hearing on 27 September 2006 and determined that North Carolina had jurisdiction over Bobby. In the prayer for relief, plaintiffs asked the court to consolidate the action (06 CVD 1810) with the earlier action (03 CVD 2183), to place Bobby in their sole legal and physical custody, and to waive custody mediation. The complaint appears to have been properly served.

Defendant filed her answer and counterclaim on 17 November 2006. She asked that defendant Murray not be added as a party and that the court find "that the best and proper placement" for Bobby was with defendant. The answer includes a sheet titled "VERIFICATION" that states the following:

> Emily McManaway, being first duly sworn, deposes and says that he/she is the Defendant in the foregoing action, that he/she has read the foregoing ANSWER and COUNTERCLAIM and knows the contents thereof to be true of his/her own personal knowledge except for those matters and things alleged therein upon information and belief; and as to those matters and things; he/she believes same to be true.

A notary in Clark County, Nevada, notarized the verification on 16 November 2006. The record also includes an affidavit of service of process by registered or certified mail, stating that defendant mailed by certified mail a copy of the answer to "Leigh Ann Peak [*sic*]," plaintiffs' attorney. The record also includes the return receipt, signed by an agent of Ms. Peek on 20 November 2006. Defendant also filed a petition to sue as an indigent, swearing that she was "financially unable to advance the costs of filing th[e] action or appeal." The petition was denied as moot, with a notation that "no filing fee or other costs are required," presumably because defendant was the defendant and therefore not suing anybody. This petition was filed in Orange County on 17 November 2006 and was denied by the Clerk of Superior Court on the same date.

Plaintiffs then issued notice by publication to defendant because she "did not answer the Complaint" and plaintiffs claimed that defend-

ants McManaway and Murray were "concealing themselves or their whereabouts to avoid service of process, or are simply refusing service via Rule 5[.]"

The trial court entered a custody order on 15 March 2007 (the 2007 custody order) granting permanent custody of Bobby to plaintiffs. According to the custody order, the Postal Service returned calendar requests and notices of hearing for 2 January 2007 and marked "refused." According to the order, after defendants did not appear at the 2 January 2007 hearing, plaintiffs used service by publication. Also, according to the order, neither defendant appeared at the March 2007 hearing. In the order, the trial court found "it appropriate to consolidate the November 2003 North Carolina action, 03 CVD 21[3]3, with this action, in order that [defendant] Murray may be included as a proper party to this action involving the custody of the minor child." On 5 July 2007 in Surry County, the plaintiff-intervener Branches filed a petition for adoption of a minor child, seeking to adopt Bobby. However, District Court Judge Spencer G. Key, Jr., later dismissed the Branches' petition for adoption for lack of subject matter jurisdiction.

On 15 October 2007, defendant filed a Rule 60 motion seeking relief from the 15 March 2007 custody order. According to the Rule 60 motion, plaintiffs' counsel misrepresented to the trial court that defendant had not filed an answer, that plaintiffs' alias and pluries summons was issued more than ninety days after the initial summons was issued on 13 October 2006, and that plaintiffs failed to exercise due diligence in ascertaining defendant's address or phone number. More disturbingly, the motion alleges that Judge Buckner never held a hearing on the matter in March 2007, despite the custody order's statement that he did hold such a hearing.

On 13 November 2007, Johnny Lee Branch and Kristin Bradley Branch filed a motion to intervene pursuant to Rule 24 as well as a motion for permanent custody. The Branches later moved to amend their motion to intervene to contain the allegation that they had "a parent-child relationship" with Bobby.

On 11 March 2008, defense counsel filed a motion to have Judge Buckner recused from hearing the case because he had committed various errors in handling the case, including: signing a custody order during calendar call, granting plaintiffs' prayers for relief without reviewing the court file, entering a court order out of session and without reviewing the court file to determine whether defendant had received proper notice, entering an order that recites that the matter

had been heard before Judge Buckner in March 2007 when the clerk's log has no record of such a hearing, and entering an order containing false findings of fact. Defense counsel alleged that "the propriety of the entry of the March 15, 2007 Custody Order is at issue in this case" and that Judge Buckner should not hear the Rule 60 motion to ensure that defendant would receive an impartial hearing.

On 25 July 2008, defendant filed another motion to recuse, this time moving the court to recuse all of the district court judges in District 15-B (Orange County) from hearing any matters in the case. On 8 August 2008, she filed a motion requesting an outside judge to hear her motions to recuse. On 24 November 2008, defendant filed a Rule 12 motion to dismiss the instant action because the trial court did not have subject matter jurisdiction to enter the 2003 consent judgment and, thus, plaintiffs did not have standing to file the 2006 suit.

On 16 January 2009, Judge Buckner filed an order denying defendant's motions to recuse and motions for relief pursuant to Rule 60. On 29 January 2009, Judge Buckner granted the Branches' motion to intervene after finding that the Branches had an alleged parent-child relationship with Bobby and, thus, had standing to intervene as plaintiffs. On 13 February 2009, defendant filed her notice of appeal from the 16 January 2009 and 29 January 2009 orders.

On 2 February 2009, defendant filed a Rule 60(b)(4) motion for relief from the 2003 consent order, asking that it be set aside as void. On 5 February 2009, defendant filed a motion in the cause, alleging that the Orange County District Court was required to relinquish jurisdiction to Nevada pursuant to the Interstate Compact on the Placement of Children.

On 27 February 2009, the Branches filed a motion to stay the proceedings on defendant's 2 February 2009 Rule 60(b)(4) motion and 3 February 2009 motion in the cause. Judge Buckner granted this motion by order filed 7 April 2009. In that same motion, Judge Buckner denied defendant's various motions to continue and recuse as well as her motion for attorneys' fees.

On 15 April 2009, defendant filed her notice of appeal from the 6 April 2009 order denying her motions for attorneys' fees and motions to continue and recuse. Before us now on appeal are Judge Buckner's orders entered 16 January 2009, 29 January 2009, and 7 April 2009.

## Arguments

### Rule 60 Motion

[1] We first address the order entered 16 January 2009, which denied defendant's Rule 60(b) motion and her motion to recuse. On appeal, defendant argues that the trial court abused its discretion by denying defendant's motion to set aside the 15 March 2007 order. We agree.

Rule 60(b) allows a court to relieve a party "from a final judgment, order or proceeding" if the judgment is void or for "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b) (2009). "[T]he standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006).

Defendant, in her Rule 60 motion, alleged that the trial court "erred by issuing or signing a custody order during calendar call without reviewing the court file" and based upon plaintiffs' counsel's "proffer." She also alleged various lapses in service of process. With respect to defendant's claim that the trial court entered the custody order without taking evidence, defendant made the following relevant allegations in her motion:

6. Defendant Emily M. McManaway was not present at Calendar Call on January 2, 2007[,] because she did not receive Plaintiffs' notice of hearing.

7. At the call of the instant case, Plaintiffs' counsel represented to the Court that Defendant Emily M. McManaway had not filed an answer. Said representation was false. . . .

8. Based upon Plaintiffs' counsel's representation that Defendant Emily M. McManaway had not filed an answer in this case, the Honorable Joseph M. Buckner either signed an order provided by Plaintiff's counsel during calendar call granting Plaintiffs sole permanent legal and physical custody of the minor child, or, issued an order from the bench during calendar call granting Plaintiffs sole permanent legal and physical custody of the minor child and instructed Plaintiffs' counsel to provide an order. The clerk's calendar call log from January 2, 2007[,] states that an order was signed; however, the custody order prepared by Plaintiffs' counsel states that the order was issued from the bench during calendar call and that Judge Buckner instructed her to "provide an appropriate custody order for entry." . . .

Plaintiffs' own brief on appeal recites the circumstances of the entry of the order as follows: "As no one appeared on behalf of either Defendant, and as neither Defendant had filed a legally effective answer to the Complaint as of that time, the Court instructed Appellee's counsel to hand up an order based upon the verified pleadings." However, it is undisputed that defendant filed an answer on 17 November 2006 and that she had served a copy of the answer on plaintiffs' counsel. Plaintiffs repeatedly stress that the answer was not signed or verified and was, therefore, not "legally effective." However, Plaintiffs cite no legal authority for this argument, and we find no legal requirement that an answer in a custody matter be verified. *See* N.C. Gen. Stat. § 1A-1, Rule 11(a) (2009) ("Except where otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit."). Moreover, defendant's answer clearly and specifically addressed the complaint by admitting some allegations, denying others, and requesting specific relief, including that custody of the minor child be granted to defendant. Despite everyone's acknowledgment that this answer was filed with the trial court and served upon plaintiffs' counsel, the 2007 order includes as finding of fact 4: "Neither Defendant has answered or even contacted Plaintiff's attorney or the court." Plaintiffs have not provided any explanation why such a finding, which is patently false, would be included in the 2007 order.

It is also undisputed that the trial court entered the 2007 custody order without hearing any evidence. This was error, even though defendant was not at the hearing to oppose the evidence or offer her own. This Court has explained that "an award of permanent custody may not be based upon affidavits." *Story v. Story*, 57 N.C. App. 509, 515, 291 S.E.2d 923, 927 (1982) (citation omitted). In *Story*, the trial court based a permanent custody order on the plaintiff's verified complaint and verified answer to the defendant's counterclaim. *Id.* at 514, 291 S.E.2d at 926. We remanded, explaining that "a more reliable form of evidence would have been plaintiff's sworn testimony, subject to cross examination by defendant's attorney." *Id.* at 515, 291 S.E.2d at 927. We concluded that "[t]he trial court erred in failing to hear any testimony in the matter" and that the defendant's failure to respond to discovery, verify his answer, or appear at the custody hearing did not preclude the trial court from "resolv[ing] the issue of [the] plaintiff's fitness to have custody or obviate the need for a hearing . . . on that issue." *Id.* at 516, 291 S.E.2d at 927 (citation omitted).

Here, as in *Story*, the trial court failed to hear any testimony in the matter, and defendant's failure to appear at the custody hearing

did not obviate the need for a hearing on the issue of custody.[2] The trial court abused its discretion by denying defendant's Rule 60(b) motion. A court cannot enter a permanent custody order without hearing testimony, and the trial court in this case should not have relied solely on the allegations in plaintiffs' complaint with respect to Bobby's custody. Accordingly, we reverse the 16 January 2009 order denying defendant's motion for relief pursuant to Rule 60, and we vacate the 2007 custody order. We remand to the district court for a hearing on the issue of custody.

Although the 2007 custody order fails on its own, even without any consideration of the 2003 consent order, we feel compelled to mention the 2003 consent order, as it formed much of the foundation upon which this entire charade of a custody case was constructed. We are very disturbed by the numerous procedural errors in this custody case. Although we have no information in our record about the merits of this custody case and we express no opinion regarding the fitness of defendant as a parent or what custody arrangement would serve the best interests of the child, it is clear that this case has been seriously flawed from the start.

Defendant argues that the 2003 consent order is void because the trial court lacked jurisdiction to enter the order because plaintiffs failed to file a complaint prior to filing the order with the Court. However, defendant has failed to present any issues as to the validity of the 2003 consent order on appeal. Defendant filed a motion pursuant to Rule 60 seeking to set aside the 2007 order on 15 October 2007; this motion makes no mention of the 2003 consent order. The trial court ruled on the defendant's Rule 60 motion on 16 January 2009, and defendant gave notice of appeal from this order on 13 February 2009. However, on 2 February 2009—after the trial court's order as to the Rule 60 motion regarding the 2007 order—the defendant filed a motion pursuant to Rule 60(b)4 seeking to set aside the 2003 consent order as "void as a matter of law." The motion does not

---

2. The need for testimony is amply demonstrated by the fact that the 15 March 2007 order includes a finding of fact that "Since March 8, 2006, the minor child has resided in the care, custody and control of Cecil Bohannan, Jr. and Marvilyn Bohannan in North Carolina." However, at the hearing on the motion to intervene on 24 November 2008, Ms. Peek, acting as counsel for both plaintiffs and the Branches, introduced Mr. and Mrs. Branch to the court as those "with whom the child has been residing for well over a year." Mr. Branch then testified that Bobby had been residing with him and his wife since the "end of February, first of March of 2007." Thus, at the time of entry of the 2007 order, Bobby was not actually living with plaintiffs, contrary to the finding in the order.

state any reasons why defendant contends that the 2003 consent order is "void as a matter of law." The trial court never ruled upon the defendant's 2 February 2009 Rule 60 motion. Defendant attempted to schedule a hearing on her Rule 60 motion, as well as other motions she had just filed, after she had given notice of appeal as to the 16 January 2009 order. As a result, on 27 February 2009, counsel for the Branches filed a motion to stay proceedings pursuant to N.C. Gen. Stat. § 1-294. An order allowing the Branches' motion to stay was entered on 6 April 2009.

> "When an appeal is perfected . . . it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein . . . ." N.C. Gen. Stat. § 1-294 (2009). The general rule has been that a timely notice of appeal removes jurisdiction from the trial court and places it in the appellate court. Pending appeal, the trial judge is generally *functus officio*, subject to two exceptions and one qualification . . . .
>
> The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned and thereby regain jurisdiction of the cause.

*In re Adoption of K.A.R.*, —— N.C. App. ——, ——, 696 S.E.2d 757, 763 (2010) (additional quotations and citations omitted; alterations in original).

Therefore, defendant's arguments regarding the 2003 consent order were never presented to or considered by the trial court, as she failed to raise them until after she had divested the trial court of jurisdiction to do so by the filing of her notice of appeal from the 16 January 2009 order. Neither the exceptions nor the qualification to the general rule that the trial court loses jurisdiction upon notice of appeal applied in this case. Defendant has not appealed from or raised any arguments in regard to the 6 April 2009 order allowing the stay of the action.

    Although a motion pursuant to Rule 60(b)(4) was the correct method for defendant to attack the 2003 consent order, her arguments in this appeal are premature. We believe that it is particularly inappropriate for us to make a ruling upon the 2003 consent order where a motion regarding this issue was filed in the trial court but not

heard, and indeed the action was stayed before the motion could be heard. Because of this procedural problem, we have no record upon which to conduct a proper review of the 2003 consent order.

However, as all parties have briefed and argued issues regarding the 2003 consent order, and in the interest of providing guidance to the trial court upon remand and in the hopes of assisting this prolonged matter to a conclusion, we agree that defendant has raised serious issues regarding the district court's lack of subject matter jurisdiction to enter the 2003 consent order. Plaintiffs attempt to present the 2003 consent order as insignificant to the issues before this Court and to assert a legal basis for its entry, but both of these arguments are spurious at best. Plaintiffs admit that they did not file a complaint or issue a summons prior to entry of the 2003 consent order. The order addresses only the issues of custody of the minor child and provision of medical insurance for him by plaintiffs. Plaintiffs seek to justify the entry of the 2003 consent order in the absence of an underlying complaint by arguing that the order was entered "as a Voluntary Support Agreement in accord with N.C.G.S. §110-132 [*sic*] which states inter alia 'that such agreements for periodic payments, when acknowledged . . . filed with, and approved by a judge of the district court at any time, shall have the same force and effect as an order of support entered by that court.' "

It is obvious that N.C. Gen. Stat. § 110-132 is not applicable to the 2003 consent order. The order makes no mention of N.C. Gen. Stat. § 110-132 and includes no findings of fact or conclusions of law which would be required by that statute, which deals with proceedings to establish paternity. The putative father, defendant Murray, was not even a party to the 2003 consent order. In fact, the order includes a finding of fact that, "[a]t this time, no biological father has been identified or named." Plaintiffs base their argument upon a misquoted section of the statute which is taken out of context; the statute actually states that

[a] written agreement to support the child by periodic payments, which may include provision for reimbursement for medical expenses incident to the pregnancy and the birth of the child, accrued maintenance and reasonable expense of prosecution of the *paternity action*, when acknowledged as provided herein, filed with, and approved by a judge of the district court at any time, shall have the same force and effect as an order of support entered by that court, and shall be enforceable and subject to

modification in the same manner as is provided by law for orders of the court in such cases.

N.C. Gen. Stat. § 110-132(a) (2009) (emphasis added). The 2003 consent order did not address periodic payments of any sort, did not include the putative father, and, according to plaintiffs' own argument in their brief, was intended only to provide for medical insurance coverage for the child. In sum, the 2003 consent order was not a paternity order, and it was not entered under N.C. Gen. Stat. § 110-132. The 2003 consent order was simply an order that made a "child-custody determination," as defined by N.C. Gen. Stat. § 50A-102(3). *See* N.C. Gen. Stat. § 50A-102(3) (2009) (defining a "child custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual."). Although the order mentions that plaintiffs will provide medical insurance for the child, it also grants "temporary joint legal and physical custody" to plaintiffs and defendant.

Section 50A-201 provides "*the exclusive jurisdictional basis for making a child-custody determination by a court of this State.*" N.C. Gen. Stat. § 50A-201(b) (2009) (emphasis added). It provides:

(a) Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

   a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

N.C. Gen. Stat. § 50A-201(a) (2009).

No complaint was filed in the case file in which the 2003 consent order was entered, nor does the 2003 consent order contain any findings of fact or conclusions of law which would begin to address the requirements of N.C. Gen. Stat. § 50A-201(a). The 2003 consent order itself reveals that North Carolina may not have been the "home state" of the child, as it includes as a finding that the child was born on 30 August 2003 and "has resided in the home of Plaintiffs, with the Defendant, since September 16, 2003[,] [in] Saxapahaw, NC[.]" Section 50A-102(7) defines "home state" as

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

N.C. Gen. Stat. § 50A-102(7) (2009). At the time of entry of the 2003 consent order, 14 November 2003, the child was less than six months old. However, the order does not include a finding that the child lived in North Carolina with either plaintiffs or defendant from birth. The time period from birth until 16 September 2003 is conspicuously missing from the findings, but a finding regarding this time period was required in order for the court to determine if North Carolina was the child's home state, as necessary for North Carolina to exercise child custody jurisdiction. Although the trial court was probably unaware of this fact in 2003, we now know that the child in fact did not live in North Carolina from birth; he lived in Nevada from birth until 16

September 2003. In any event, the 2003 consent order made no finding or conclusion that North Carolina was the "home state" of the child.[3]

The parties cannot confer subject matter jurisdiction upon the court by entry of a consent order regarding child custody. In *Foley v. Foley*, this Court addressed the effect of entry of a consent order regarding child custody as follows:

> Defendant argues, and plaintiff concedes, the signing of the Consent Order did not waive any challenge to subject matter jurisdiction. The UCCJEA is a jurisdictional statute, and the jurisdictional requirements of the UCCJEA must be met for a court to have power to adjudicate child custody disputes. *[S]ee* N.C.G.S. §§ 50A-101 to -317 (2001). The PKPA is a federal statute also governing jurisdiction over child custody actions and is designed to bring uniformity to the application of the UCCJEA among the states. *[S]ee* 28 U.S.C.A. § 1738A (2002). Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel. Accordingly, the trial court erred in ruling the signing of the Consent Order by defendant waived any challenge to the subject matter jurisdiction of the trial court.

156 N.C. App. 409, 411-12, 576 S.E.2d 383, 385 (2003) (additional citations omitted). Therefore, although the 2003 consent order includes a conclusion of law that the district court has jurisdiction over the parties and subject matter of the proceeding, there appears to be no factual basis to support such a conclusion of law.

The 2003 consent order also states that the cause came "on to be heard . . . during a regularly scheduled session of Civil District Court" and "at the call of the calendar for trial, counsel indicated to the court that an Agreement with regard to the issues of child custody had been executed and was ready for entry of judgment[.]" However, plaintiffs acknowledge that there was no "cause" and the case was not heard during any regularly scheduled session of district court. By all accounts, the 2003 consent order, though entered by the district court, appears to be a fiction. Indeed, during oral arguments before this Court, plaintiffs' counsel acknowledged that the 2003 order was

---

3. Nor did the order address the provisions of the Parental Kidnapping Prevention Act of 1980 (PKPA), as it made no finding that the child had no home state. *See Potter v. Potter*, 131 N.C. App. 1, 6, 505 S.E.2d 147, 150 (1998) ("Accordingly, a trial court may assume significant connection jurisdiction under G.S. § 50A-3(a)(2) in an initial child custody matter only upon proper determination by the court that the child in question has no home state as defined in 28 U.S.C. § 1738A(b)(4) at the time the custody action pending before the trial court was commenced.").

not valid. Thus, although we do not hold the 2003 consent order to be void at this time because the trial court never ruled upon the defendant's Rule 60(b)(4) motion as to that order, we strongly urge the trial court to consider the defendant's arguments as to the 2003 consent order carefully on remand.

## Motion to Intervene and Motion for Custody

[2] Defendant argues that the trial court erred by granting plaintiff interveners' motion to intervene and motion for custody. We first note that the Branches did not file a brief before this Court on appeal. The arguments we address are those raised by plaintiffs and by defendant. The Branches filed their original motion to intervene on 13 November 2007, eight months after the district court entered its custody order granting sole legal and physical custody of Bobby to plaintiffs. In their motion, the Branches sought intervention pursuant to Rule 24 of our Rules of Civil Procedure. They alleged that they "have an interest relating to the issue of custody of the minor child who is the subject of the action and their ability to protect that interest would be impaired and impeded unless they are adequately represented in said custody action." The district court later amended the motion to intervene "to contain the allegation that the Branches have a parent-child relationship with the child who is the subject of this action."

The motion also moved the trial court, "pursuant to N.C.G.S. Chapter 50[,] for custody of the minor child," reciting the following reasons:

(a) the minor child has resided in their physical care since March 2, 2007[,] and they have a continuing on-going relationship with the minor child; (b) upon information and belief, the biological parents of the minor child have neglected and abandoned the minor child, are incapable of providing the proper care and supervision of the minor child, and their conduct has been inconsistent with their constitutionally protected status; and (c) it is in the best interests of the minor child that he be placed in their permanent care, custody and control either solely or jointly with the Plaintiffs in this action.

The trial court granted the Branches' amended motion on 29 January 2009. The trial court found as fact that the Branches "have an alleged parent-child relationship with" Bobby and "have standing pursuant to N.C.G.S. § 50-13.1 and § 50.13.2 to intervene in this action." In the order, the trial court decreed that the Branches' motion to intervene and motion for custody would constitute their initial pleading, and it deemed that the initial pleading was filed on 29 January 2009.

The Branches sought intervention pursuant to Rule 24(a)(2) of our Rules of Civil Procedure. Rule 24(a)(2) provides:

Intervention of right.—Upon timely application anyone shall be permitted to intervene in an action:

\* \* \*

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C. Gen. Stat. § 1A-1, Rule 24(a)(2) (2009). To satisfy the requirements of Rule 24(a)(2), the "intervening party 'must show that (1) it has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and (3) there is inadequate representation of that interest by existing parties." *Harvey Fertilizer & Gas Co. v. Pitt County*, 153 N.C. App. 81, 85-86, 568 S.E.2d 923, 926 (2002) (quoting *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 683 (1999)). We review the trial court's order granting intervention *de novo. Id.* at 89, 568 S.E.2d at 928.

"Standing for an individual to bring an action for child custody is governed by N.C.G.S. § 50-13.1(a)[.]" *Yurek v. Shaffer*, —— N.C. App. ——, ——, 678 S.E.2d 738, 744 (2009). General Statutes section 50-13.1 provides that "[a]ny parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child[.]" N.C. Gen. Stat. § 50-13.1(a) (2009).

Although N.C.G.S. § 50-13.1(a) broadly grants standing to any parent, relative, or person claiming the right to custody, when such actions are brought by a non-parent to obtain custody to the exclusion of a parent, our appellate courts have also required allegations of some act inconsistent with the parent's constitutionally protected status.

*Yurek* at ——, 678 S.E.2d at 744 (citations omitted).

In *Ellison v. Ramos*, this Court elaborated on when a third party has standing in a custody dispute with a natural parent. 130 N.C. App. 389, 502 S.E.2d 891 (1998). We held "that a relationship in the nature of a parent and child relationship, even in the absence of a biological relationship, will suffice to support a finding of standing." *Id.* at 394,

502 S.E.2d at 894. However, *Ellison* makes clear that a "parent and child relationship" is a legal conclusion that must be factually supported, *id.*; merely using the phrase "parent and child relationship" is not sufficient to support a finding of standing. In *Ellison*, the child's biological mother was in a persistent vegetative state, and the father, Mr. Ramos, entered into a relationship with the plaintiff, Ms. Ellison. *Id.* at 391, 502 S.E.2d at 892. After Ms. Ellison and Mr. Ramos separated, Mr. Ramos sent the child to live in Puerto Rico with the child's grandparents. *Id.* at 392, 502 S.E.2d at 893. Ms. Ellison brought suit, seeking custody of the child. *Id.* The trial court dismissed her complaint after finding that she lacked standing to proceed. *Id.* We reversed the order of dismissal after finding that Ms. Ellison's complaint alleged sufficient facts to conclude that she and the child had a parent-child relationship. *Id.* at 396, 502 S.E.2d at 895. We based our reversal on the following factual allegations drawn from Ms. Ellison's complaint:

> Ms. Ellison's relevant allegations were that she "is the only mother the minor child has known and [that] she has mothered the child" for the five years she and Mr. Ramos were intimately involved. Further, "after the parties separated, the minor child lived with [Ms. Ellison] and was cared for by [Ms. Ellison] until [Mr. Ramos] removed her from [Ms. Ellison]'s care and took her to Puerto Rico, where he left her with her maternal grandparents." Finally, "during [Ms. Ellison] and [Mr. Ramos]'s relationship, [Ms. Ellison] was the responsible parent in the rearing and caring for the minor child, as she was the adult who took the minor child to her medical appointments, to school, attended teacher conferences, took the minor child for diabetic treatment and counseling, provided in-home medical care and treatment for her diabetes, taught her about caring [for] her diabetes, and bought all the child's necessities, including clothing, school supplies, medical supplies, toys, books, etc."

*Id.*

Here, the Branches' motion made a single factual allegation to support a conclusion that a parent-child relationship existed between them and Bobby: "the minor child has resided in their physical care since March 2, 2007[,] and they have a continuing on-going relationship with the minor child." The Branches did not actually make any allegation of a "parent-child relationship" in their motion; this allegation was added by amendment after Mr. Branches' testimony, to con-

form the motion to his testimony. The motion includes no facts which would indicate the type of relationship the Branches have to Bobby. Mr. Branch's testimony indicated only that: Bobby had lived with the Branches since 2007, Bobby had bonded with Mr. Branch and his wife, Bobby had "really thrived," and Mr. Branch "love[d] that boy with all [his] heart." We hold that these factual allegations are not sufficient to support a conclusion that a parent-child relationship existed between the Branches and Bobby. Accordingly, the Branches have not made a sufficient showing on this record to support a determination of standing to intervene in the matter, and the trial court erred by holding otherwise.

Even assuming *arguendo* that the Branches would have standing to file a motion to intervene in this custody action, the Branches filed the motion to intervene after entry of the 2007 custody order which granted permanent custody to plaintiffs. Thus, the Branches were requesting to intervene to seek a modification of the 2007 custody order. Modifications of child custody are governed by N.C. Gen. Stat. § 50-13.7.

To modify a child custody or support order, section 50-13.7(a) requires a "motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-13.7(a) (2009).

[O]nce the custody of a minor child is judicially determined, that order of the court cannot be modified until it is determined that (1) there has been a substantial change in circumstances affecting the welfare of the child; and (2) a change in custody is in the best interest of the child. [Because] there is a statutory procedure for modifying a custody determination, a party seeking modification of a custody decree must comply with its provisions. There are no exceptions in North Carolina law to the requirement that a change in circumstances be shown before a custody decree may be modified.

*Bivens v. Cottle*, 120 N.C. App. 467, 469, 462 S.E.2d 829, 831 (1995) (quotations and citations omitted).

The Branches' motion to intervene and motion for custody did not contain any grounds for modification of the 2007 custody order, nor did it allege any change in circumstances affecting the welfare of the child, much less a substantial change in circumstances. The motion also fails to allege why it would be in Bobby's best interest to

change custody. In addition, Mr. Branch's testimony at the motion to intervene hearing demonstrated the opposite of a change of circumstances: He testified that Bobby was living with him and his wife at the time 2007 order was entered and that Bobby continued to live with them.

## Dismissal Ex Mero Motu

[3] Defendant also argues that we should dismiss this action *ex mero motu* because Nevada has jurisdiction over the custody case, not North Carolina. "When the record clearly shows that subject matter jurisdiction is lacking, the [c]ourt will take notice and dismiss the action *ex mero motu* in order to avoid exceeding its authority." *In re J.T.*, 363 N.C. 1, 3-4, 672 S.E.2d 17, 18 (2009) (quotations and citations omitted). Here, defendant bases her argument on a 2006 Nevada temporary custody order. That order is not in the record on appeal for this case, COA 09-887. However, that order is in the record on appeal for the companion to this case, COA 09-889.

> Ordinarily, a court, in deciding one case, will not take judicial notice of what may appear from its own records in another and distinct case, unless made part of the case under consideration, even though between the same parties or privies and in relation to the same subject matter.

> It was held in *Daniel v. Bellamy*, 91 N.C. 78, that in a proceeding against executors for an account that a Probate Court could not take judicial notice of the fact that the probate of the will naming defendants as executors had been revoked in another proceeding in the same court.

> This is far from saying that an appellate court may not take judicial notice of, and give effect to its own records in another, but interrelated, proceeding, particularly where the issues and parties are the same, or practically the same, and the interrelated case is specifically referred to in the case on appeal in the case under consideration.

*State v. McMilliam*, 243 N.C. 775, 777, 92 S.E.2d 205, 207 (1956) (quotations and citations omitted). In *McMilliam*, we took judicial notice of facts included in the record of another pending case involving the same parties:

> The case on appeal specifically states that Judge Fountain's judgment was based upon the evidence in the case of *S. v. James*

*McMilliam and Bettie Lee McMilliam,* "the companion case to this one." The case of *S. v. James and Bettie Lee McMilliam* was argued before us on the same day as the instant case by the same counsel, and is before us for decision. The evidence in this case, according to the case on appeal, was omitted to avoid repetition, and no doubt to save costs for the appellants. The evidence in *S. v. James and Bettie Lee McMilliam* is before us in that case, and it seems clear that it was the plain intent of the counsel for the defense and the trial solicitor to make the evidence in that case a part of this case. We know of no reason why we should not take judicial notice of, and consider in the instant case the evidence in the interrelated case.

*Id.* at 777, 92 S.E.2d at 207. *See also West v. G. D. Reddick, Inc.,* 302 N.C. 201, 202, 274 S.E.2d 221, 223 (1981) ("This Court has long recognized that a court may take judicial notice of its own records in another interrelated proceeding where the parties are the same, the issues are the same and the interrelated case is referred to in the case under consideration.") (citations omitted). Accordingly, we take judicial notice of the 2006 orders entered by the district court in Clark County, Nevada, which are included in the record on appeal of COA 09-889. The first order, filed 15 March 2006, placed Bobby in protective custody after finding that "continuation of residence in the home [of defendant] would be contrary to the welfare of the child(ren)." The order recommended that Bobby be released to Cecil Bohannan "pending further proceedings." The order also recommended that "the Clark County Department of Family Services provide for the placement, care and supervision of [Bobby] until further order of this Court." The second order, filed 7 October 2006, followed a telephonic UCCJEA hearing. The Nevada court concluded that it did "not have UCCJA [*sic*] Jurisdiction, and the State of North Carolina has UCCJA [*sic*] Jurisdiction due to a valid Court Order." The "valid court order" mentioned in the Nevada order is the 2003 consent order discussed above.

We cannot disturb an order from another state's district court, even if it is based upon a North Carolina order that we believe may be void. Accordingly, dismissal *ex mero motu* is not appropriate.

## Conclusion

In sum: (1) we reverse the 16 January 2009 order denying defendant's Rule 60 motion; (2) we vacate the 2007 custody order because the trial court failed to take any evidence before entering the order; (3) we reverse the 29 January 2009 order granting the Branches'

motion to intervene and motion for custody; and (4) we remand matter 06 CVD 1810 to the district court for a custody hearing not inconsistent with this opinion.

This proceeding has been exceptionally contentious, and we have not addressed the many motions filed in this matter that were not subjects of this appeal. Such contentiousness does not benefit the child. We admonish counsel for all parties and the trial court to take great care to follow the statutory requirements in form and in substance. Bobby's custody has been in dispute for most of his short life, and his life has been changed by these proceedings, although whether his life has been changed for better or worse we cannot say at this point. Regardless, he deserves better than he has received from this proceeding thus far.

Reversed in part; vacated in part; affirmed in part.

Judges BRYANT and STROUD concur.