An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1249

NORTH CAROLINA COURT OF APPEALS

Filed:  20 May 2014

THE NORTH CAROLINA STATE BAR,
    Plaintiff

    v.

JEFFREY S. BERMAN, Attorney,
    Defendant

Disciplinary Hearing Commission
of The North Carolina State Bar
No. 12 DHC 31

Appeal by defendant from order entered 1 May 2013 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 6 March 2014.

> *The North Carolina State Bar, by Counsel Katherine Jean and Deputy Counsel David R. Johnson, for plaintiff-appellee.*
>
> *The Law Office of Bryce D. Neier, by Bryce D. Neier, for defendant-appellant.*

CALABRIA, Judge.

Attorney Jeffrey S. Berman ("Berman") appeals from an Order of Discipline issued by the Disciplinary Hearing Commission ("DHC") of the North Carolina State Bar ("State Bar") finding him in violation of the North Carolina Rules of Professional

Conduct and suspending his license to practice law for one year. We affirm.

## I. Background

Berman was admitted to the North Carolina State Bar in 1988. During the period relevant to the matters before the DHC, Berman was actively engaged in the practice of law in Greensboro, North Carolina, focusing largely on custody and child support matters. The State Bar divided its complaint against Berman into three claims for relief: Berman's handling of a custody matter for Vanessa Greeson, his renewal applications for mediation certification, and his handling of a custody matter for Lisa Goins.

## A. The Greeson Matter

In May 2011, Vanessa Greeson ("Greeson") sought legal advice from Berman regarding her five-month-old granddaughter's status and placement. Greeson's granddaughter ("K.C.") had been hospitalized with serious injuries, and the Guilford County Department of Social Services ("DSS") had been notified. Greeson and K.C.'s parents agreed to a DSS safety plan that placed K.C. with a family friend ("the friend"). Because it was unclear who had caused K.C.'s injuries, only supervised visitation with K.C.'s parents was permitted. Greeson was

concerned that DSS would attempt to petition the court for custody of K.C.

Berman prepared a child custody complaint on Greeson's behalf. Berman intentionally omitted any allegations that K.C.'s parents acted inconsistently with their constitutionally protected parental rights. According to the accompanying Affidavit as to Status of Minor Child, K.C. lived with her "mother and/or third party," but the affidavit failed to provide specific addresses or to state that the friend had physical custody of K.C.

Berman also prepared a consent order granting Greeson joint legal custody and primary physical custody of K.C. When Berman presented the consent order to the court, *ex parte*, he did not inform the court that DSS was involved with the family or that K.C. was living with the friend. Berman informed the court that K.C. was already living with Greeson. When DSS discovered that Greeson had obtained custody of K.C. by consent order, it immediately filed a petition alleging that K.C. was abused, neglected, and dependent. K.C. was subsequently placed in foster care for six months before she was returned to her family.

B. Mediation Certification

Berman was also a mediator certified by the North Carolina Dispute Resolution Commission. To maintain his certification, Berman was required to submit annual Mediator Certification Renewal Applications ("renewal applications"), which specifically ask applicants to disclose pending complaints and disciplinary proceedings.

Berman received notice in August 2011 that a grievance regarding his conduct in the Greeson matter had been filed with the State Bar. In September 2011, and again in August 2012, Berman submitted renewal applications to the Dispute Resolution Commission, but did not disclose the pending grievance or that a complaint had been filed against him with the State Bar in the applications. On both applications, Berman certified that he had given "true, accurate, and complete information."

C. The Goins Matter

In December 2012, Berman represented Lisa Goins in a child custody matter in Guilford County. On 5 December 2012, Berman's request for an *ex parte* emergency custody order was denied by Chief District Court Judge Wendy Enochs ("Judge Enochs"). Because the local rules required parties to participate in mediation before scheduling a hearing, Judge Enochs also denied Berman's request for the matter to be heard within ten days.

Berman then approached another District Court Judge in the hallway, who allowed Berman to schedule the matter for hearing on 18 December 2012. Berman did not inform the second judge that Judge Enochs had previously denied his *ex parte* motion for emergency custody and his request to schedule a hearing.

D. Disciplinary Hearing

On 16 July 2012, the State Bar filed a complaint against Berman regarding his conduct in the Greeson matter. The State Bar amended its complaint in January 2013 to include Berman's conduct in all three matters. After a hearing, the DHC issued an Order of Discipline on 1 May 2013, concluding Berman's conduct violated the Rules of Professional Conduct as the State Bar claimed. The DHC specifically concluded that Berman brought a proceeding that lacked basis in law and/or fact in violation of Rule 3.1; that he knowingly made false statements to the tribunal in violation of Rule 3.3(a); that he failed to disclose all material facts that would enable the judge to make an informed decision in violation of Rule 3.3(d); that he engaged in conduct involving dishonesty, deceit, or misrepresentation in violation of Rule 8.4(c); and that his conduct was prejudicial to the administration of justice in violation of Rule 8.4(d).

Based on its conclusions and the evidence presented, the

DHC suspended Berman's license to practice law for one year. Berman appeals.

Berman argues that the DHC erred in finding that he committed ethical violations in all three matters, and that the suspension of his license was disproportionate and unwarranted. We disagree.

## II. Standard of Review

Appeals from the DHC are reviewed under the "whole record" test, which requires a determination of whether the DHC's findings of fact are supported by substantial evidence in view of the record, and whether the findings support the conclusions of law. *N. Carolina State Bar v. Talford*, 356 N.C. 626, 632, 576 S.E.2d 305, 309 (2003). To determine whether the DHC's decision has a rational basis in the evidence, the whole record test requires consideration of any contradictory evidence or evidence from which conflicting inferences may be drawn, and that the DHC used clear, cogent, and convincing evidence to support its findings and conclusions. *Id.*, 576 S.E.2d at 310.

Rule 3.1 states that a lawyer "shall not bring or defend a proceeding . . . unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument[.]" N.C. Rev. R. Prof. Conduct 3.1 (2013). Rule 3.3

concerns candor towards the tribunal, stating that a lawyer shall not knowingly make false statements of material fact to the court and, in *ex parte* proceedings, shall inform the court of all material facts known to the lawyer that will enable the court to make an informed decision, "whether or not the facts are adverse." N.C. Rev. R. Prof. Conduct 3.3 (a)(1), (d) (2013). Rule 8.4 states that it is professional misconduct for a lawyer to engage in conduct that involves dishonesty, fraud, deceit, or misrepresentation, or prejudices the administration of justice. N.C. Rev. R. Prof. Conduct 8.4 (c), (d) (2013). Comment 4 to Rule 8.4 states that a showing of a reasonable likelihood of prejudicing the administration of justice is sufficient. *Id*., Cmt. 4. In addition, "the phrase 'conduct prejudicial to the administration of justice' . . . should be read broadly to proscribe a wide variety of conduct, including conduct that occurs outside the scope of judicial proceedings." *Id*.

As an initial matter, we note that Berman's answer to the State Bar's complaint admitted the majority of the factual allegations. Therefore, those facts are conclusively established. *Harris v. Pembaur*, 84 N.C. App. 666, 670, 353 S.E.2d 673, 677 (1987).

### III. The Greeson Matter

We first address the issue of whether the DHC erred in finding Berman failed in his duty of candor and honesty as an attorney and officer of the court by omitting material information and making a false statement in his submission of the Greeson consent order to the court. Berman argues that the DHC's findings do not show that he committed ethical violations in the Greeson matter. We disagree.

In the instant case, Berman testified at the hearing regarding the requirements for third-party custody complaints, indicating that there must be an allegation that the parents are either unfit or that they acted in a manner inconsistent with their constitutionally protected parental rights. Berman also testified that he intentionally omitted allegations in the complaint regarding the fitness or constitutionally protected status of K.C.'s parents. Berman neither made an effort to contact the friend, who had physical custody of K.C., nor gave her notice of the consent order. He also admitted at the hearing that the Affidavit as to Status of Minor Child was inadequate and did not identify the person who had custody of K.C.

Judge Jan Samet ("Judge Samet") also testified at the hearing regarding the consent order. Judge Samet stated that

when Berman presented the consent order for his signature, Berman did not mention that K.C. had been hospitalized, that DSS was involved with the family, or that Greeson was not permitted visitation with K.C. Judge Samet also testified that Berman told him Greeson had physical custody of K.C. If he had known that K.C. was living with a third party at the time, Judge Samet testified, he would not have approved the consent order. Judge Enochs testified that Berman later characterized the case as a "friendly suit" with all parties in agreement. The evidence regarding the Greeson matter supports the DHC's findings of fact, which in turn support the DHC's conclusions that Berman violated Rules 3.1, 3.3(a), 3.3(d), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.

Berman contends that since the complaint was an action for temporary custody with all parties in agreement, he was not required to make allegations regarding the parental status of K.C.'s parents, citing *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997). Similarly, Berman contends that he was not required to disclose DSS involvement with the family to the court when he presented the consent order. However, Berman fails to recognize that the complaint he filed in the matter alleged a disputed custody matter, and thus required the allegations regarding the

parents' constitutionally protected status pursuant to *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994).

Even if Berman expected the lawsuit to be "friendly," he cites no authority to support his proposition that legally required allegations can be omitted from a custody complaint simply because an attorney expects that a lawsuit will be "friendly." Even consent orders must contain legally required findings of fact and conclusions of law, particularly in custody cases, as the court's jurisdiction is based upon the required findings of fact and conclusions of law. *See Bohannan v. McManaway*, 208 N.C. App. 572, 584, 705 S.E.2d 1,9 (2010) ("The parties cannot confer subject matter jurisdiction upon the court by entry of a consent order regarding child custody.") In *Foley v. Foley*, this Court addressed the effect of entry of a consent order regarding child custody:

> Defendant argues, and plaintiff concedes, the signing of the Consent Order did not waive any challenge to subject matter jurisdiction. The UCCJEA is a jurisdictional statute, and the jurisdictional requirements of the UCCJEA must be met for a court to have power to adjudicate child custody disputes. . . . [S]ee N.C.G.S. §§ 50A-101 to -317 (2001). The PKPA is a federal statute also governing jurisdiction over child custody actions and is designed to bring uniformity to the application of the UCCJEA among the states. . . . [S]ee 28 U.S.C.A. § 1738A (2002).

> Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel. Accordingly, the trial court erred in ruling the signing of the Consent Order by defendant waived any challenge to the subject matter jurisdiction of the trial court.

156 N.C. App. 409, 411-12, 576 S.E.2d 383, 385 (2003) (citations omitted). If the complaint had included the required allegations as to K.C.'s residency and DSS involvement as required by the UCCJEA, the trial court would not have entered the consent order. The evidence also shows that Berman was aware of the requirements for a third-party custody complaint, and that the information regarding DSS involvement constituted a material fact that would have influenced the court's decision. These arguments are without merit.

## IV. Dispute Resolution Commission

The next issue is whether the DHC erred in concluding Berman's failure to disclose pending disciplinary matters to the Dispute Resolution Commission violated the Rules of Professional Conduct.

The factual basis for the State Bar's claim in this matter is undisputed. However, Berman contends that he was not required to disclose the pending grievance because it was not a formal complaint, citing *N. Carolina State Bar v. Braswell*, 67

N.C. App. 456, 313 S.E.2d 272 (1984). However, the *Braswell* language that Berman cites is an explanation of the disciplinary procedures of the State Bar and does not address the requirements of disclosure. In addition, *Braswell* addresses an attorney's right to notice and opportunity to be heard in a State Bar disciplinary proceeding. *Braswell* does not authorize a lawyer to conceal material information or provide false certifications of fact. This argument is without merit.

Because the facts in this matter are undisputed, the DHC's findings of fact are supported by the record. The findings show that Berman twice concealed the pending grievance from the Dispute Resolution Commission, and thus support the DHC's conclusions that Berman violated Rules 8.4(c) (conduct involving dishonesty, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

## V. The Goins Matter

Next, we consider whether the DHC erred in concluding Berman failed to disclose material information to the second District Court Judge in his request for a custody hearing after his initial request had been denied by Judge Enochs.

Berman's precise argument concerning this issue is unclear.

However, the majority of the facts related to this matter are undisputed. The State Bar also presented evidence showing that Berman approached the second District Court Judge in the hallway after Judge Enochs had denied his request for emergency custody. Berman asked if a request for emergency custody in the case could be added to the second judge's calendar for 18 December 2012, and did not inform the second judge that the request for emergency custody had already been heard and denied. The State Bar also presented evidence showing that a continuance order in the case had been modified by marking out Judge Enochs's name as the presiding judge at the hearing for the request for emergency custody. The document appeared to indicate that the second judge had heard Berman's motion and set the case for hearing. Judge Enochs testified that she told Berman that since his request for emergency custody was denied, the case would have to proceed to mediation in accordance with the local rules.

Berman argues that the DHC incorrectly found that he had engaged in an improper *ex parte* communication with the second judge and that he had asked for an *ex parte* emergency custody order from the second judge after Judge Enochs had previously denied it. Berman mischaracterizes the DHC's findings. The DHC specifically found that Berman requested the second judge *to*

*hear* his request for emergency custody on 18 December 2012, that Berman did not give the opposing party notice of this communication, and that Berman did not inform the second judge that his request for emergency custody had already been heard and denied. The DHC did not find or conclude that Berman asked the second judge for an emergency custody order.

The evidence and undisputed facts support the DHC's findings of fact regarding the Goins matter. In addition, the findings support the DHC's conclusion that Berman's failure to disclose to the second judge that his request for emergency custody in the Goins matter had previously been denied constituted a failure to inform the tribunal of all material facts that would enable the tribunal to make an informed decision in violation of Rule 3.3(d).

Berman appears to take issue specifically with what he terms the "draconian" policies and local rules of court for Guilford County, and contends that he was not required to provide the second judge with any information concerning the denial of his initial *ex parte* custody motion. While Berman appears to disagree with the local rules, he does not dispute that as a practicing attorney in Guilford County, he was still subject to those rules.

## VI. Discipline

Finally, we consider whether a one year suspension of Berman's license to practice law was appropriate discipline.

"[T]he statutory scheme set out in N.C.G.S. § 84-28 clearly evidences an intent to punish attorneys in an escalating fashion keyed to: (1) the harm or potential harm created by the attorney's misconduct, *and* (2) a demonstrable need to protect the public." *Talford*, 356 N.C. at 637-38, 576 S.E.2d at 313. In order to merit the imposition of suspension, there must be a clear showing of how the attorney's actions resulted in significant or potentially significant harm, and a clear showing of why suspension is the only sanction option that can adequately serve to protect the public from future transgressions by the attorney. *Id*. at 638, 576 S.E.2d at 313. The Rules of the North Carolina State Bar also set forth several specific factors for the DHC to consider in imposing discipline. 27 N.C.A.C. 1B § .0114(w) (2013).

In the instant case, the DHC made additional findings of fact for the dispositional stage regarding, *inter alia*, Berman's experience in the practice of law and in custody cases specifically; K.C.'s vulnerability as a five-month-old infant; Greeson's reliance on Berman's professional judgment and legal

knowledge to effectuate her goal of preventing K.C.'s potential placement in foster care, and that Berman's actions caused the very outcome she sought to avoid; that Berman's lack of candor with the court undermined the integrity of the adjudicative process; that Berman had no prior professional discipline; and that Berman sought to justify his actions and did not express remorse. The DHC specifically found that Berman's conduct in the Greeson matter "created a foreseeable risk of potentially catastrophic harm to the infant by seeking to place her in the care of someone who had not yet been ruled out as the perpetrator of abuse against K.C." and that he "caused significant harm to K.C.'s mother, in that she experienced substantial anxiety and distress about her daughter's placement in a foster home[.]"

The DHC expressly concluded that several of the enumerated factors in 27 N.C.A.C. 1B § .0114(w) were present in the instant case, including, *inter alia*, a negative impact of Berman's actions on the administration of justice; acts of dishonesty, misrepresentation, or deceit; refusal to acknowledge the wrongful nature of his conduct in Berman's initial response to the State Bar; and a pattern of misconduct. The DHC stated that it considered lesser discipline, but that discipline less than

suspension was insufficient given the gravity of the harm to the administration of justice and the actual and potential harm to the public. The DHC then suspended Berman's license to practice law for one year, and provided that he could apply to be reinstated at the end of the one year suspension.

The DHC's findings support a clear showing that Berman's conduct resulted in significant or potentially significant harm to Greeson, K.C., and K.C.'s mother. In addition, the DHC's findings support its conclusions that Berman's conduct constituted a pattern of misconduct having a negative impact on the administration of justice, and that suspension was the only viable sanction that could adequately protect the public from future transgressions. Berman contends that there is nothing in the record to indicate that he attempted to deceive anyone. However, the evidence in the record contradicts this claim. Berman's arguments to this Court constitute rationalizations and excuses for his misconduct, and it is clear that Berman has failed show any remorse for his misconduct.

## VII. Conclusion

Berman's conduct in all three matters that comprised the State Bar's claims for relief constituted misconduct pursuant to the Rules of Professional Conduct. While Berman admits that

there is a factual basis for the discipline, his claim that his misconduct did not rise to violations of the Rules of Professional Conduct is mistaken. The DHC's findings of fact are supported by the record evidence and Berman's own admissions, and its conclusions are supported by the findings. The DHC also provided substantial findings sufficient to support the suspension of Berman's license. Therefore, we affirm the order of the DHC.

Affirmed.

Judges STROUD and DAVIS concur.

Report per Rule 30(e).