IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-301

Filed 16 January 2024

Chatham County, No. 21-CVD-344

LINDSAY OLDHAM MANESS, Plaintiff,

v.

CIERA KORNEGAY and EDEN MCNAIR, Defendants.

Appeal by defendant Eden McNair from order entered 4 November 2022 by Judge Hathaway S. Pendergrass in Chatham County District Court. Heard in the Court of Appeals 14 November 2023.

*Kathryn Hutchinson for plaintiff-appellee (no brief filed).*

*Ciera Kornegay, pro se, for defendant-appellee Kornegay (no brief filed).*

*Dobson Law Firm, PLLC, by Shawna D. Vasilko, for defendant-appellant McNair.*

THOMPSON, Judge.

In this child custody case, appellant-father appeals from an order entered concluding that he acted inconsistent with his constitutionally protected parental rights and ordering custody proceedings to be decided based on the best interests of the child. We agree and reverse the trial court's temporary custody order entered 7 November 2022.

## I. Factual Background and Procedural History

This matter arises from a dispute over the custody of a minor child, Jacob,[1] who was born to mother Ciera Kornegay and father Eden McNair in November 2018. At the time of Jacob's birth, neither Kornegay nor appellant-father was certain that McNair was Jacob's biological father, but once DNA testing confirmed Jacob's parentage, appellant-father began a relationship with his son, including having primary custody of the child for a period of several months when Jacob was an infant and Kornegay lacked a residence. In January 2020, Kornegay and Jacob moved in with plaintiff Lindsay Maness. Kornegay had dated Maness's son for several months before Kornegay became pregnant with Jacob, and after that relationship ended, Maness continued her connection with Kornegay such that she was "like a daughter to" Maness. Once Maness learned that Kornegay was pregnant, she began buying items for Kornegay and preparing for the baby's arrival, causing Maness to feel that she "kind of cemented [her] spot in [Jacob's] life." While Maness expressed clear concerns about Kornegay having custody of Jacob, she testified that she didn't know appellant-father and did "not have enough interaction or communication or dealings with him to be able to form an opinion on" any concerns about appellant-father having custody.

For a number of months after Kornegay and Jacob moved in with Maness, appellant-father continued to exercise regular visits with Jacob, approximately every

---

[1] A pseudonym is used to protect the privacy of the minor child.

other weekend. These visits were facilitated by appellant-father's mother, who would pick Jacob up from Maness's home and drive him to appellant-father's location. Appellant-father testified that he thought Maness was simply acting as a babysitter for Jacob.

Unbeknownst to appellant-father, at some point in August 2020, Kornegay left Jacob with Maness, moved out of Maness's residence, and ceased any contact with appellant-father. Appellant-father repeatedly attempted to contact Kornegay "through various means of communication but was unsuccessful." It does not appear that Maness attempted to contact appellant-father, either directly or through appellant-father's mother to tell appellant-father that Kornegay had moved out or that Jacob—appellant-father's child—had been left in Maness's care, despite her lack of any legal custody or other rights to the child. Maness also failed to file a complaint seeking legal custody of Jacob at that time.

In September 2020, Kornegay and Maness executed a "temporary guardianship agreement" which purported to extend custody and other rights over Jacob to Maness but which, in actuality, was of no legal import. Appellant-father was not a party to this agreement and did not consent to it. In January 2021, appellant-father was finally able to contact Kornegay, who claimed that she had moved to South Carolina with Jacob and shared with appellant-father photos of Jacob to support this false claim. Appellant-father told Kornegay that he planned to visit her and Jacob in South Carolina as soon as his car was repaired, but before this proposed trip could

take place, appellant-father received a call from the Chatham County Department of Social Services (DSS) informing him that Jacob was in the physical custody of Maness in that locale, not with Kornegay in South Carolina. DSS suggested that appellant-father "go to the city [where Maness resided], grab the police, then go to [Maness's] house and get [your] son," and the following day, he followed that recommendation and called law enforcement to Maness's home for their assistance in regaining physical custody of Jacob—appellant-father's son—from the care of Maness—who had no familial relationship or legal rights to the child. When law enforcement officers arrived, Maness showed them the "temporary guardianship agreement" and the officers, after consulting with DSS, informed Maness that the document was "likely insufficient" and suggested that she seek a court order. Jacob was, however, left in the care of Maness.

Following this incident, Maness blocked appellant-father's mother from picking up Jacob for any visits with appellant-father as had been the arrangement previously and also acknowledged that she rejected at least one attempt by appellant-father to arrange for visitation by contacting Maness's attorney. At that point, in May 2021, appellant-father filed a report with DSS. Maness responded by filing a "Complaint for Custody for Non-Parent(s)" on 24 May 2021 against Kornegay and appellant-father, and litigation in this case ensued. The record in this matter further reveals the following: Appellant-father initially responded pro se with a handwritten letter to the court on 9 June 2021 expressing that he was "trying to claim custody" of

Jacob. On 2 July 2021, appellant-father filed a calendar call request for 26 July 2021. A "Notice for Custody Mediation Orientation" document was filed by Maness on 29 July 2021. By August 2021, appellant-father had obtained counsel, and on 30 August 2021, appellant-father filed an amended answer and motion to dismiss, raising, *inter alia*, appellant-father's constitutionally protected status as a parent and requesting sole physical and legal custody of his son.

The case was not set for hearing until November 2021 and the first order regarding custody in the matter was filed on 13 December 2021, providing "custody" to appellant-father on 24 December 2021 and 1 January 2022, but otherwise apparently leaving Jacob in the physical custody of Maness, despite her non-parent status and lack of any legal rights to the child. The case was continued on 24 February 2022, and on 4 March 2022, the trial court ordered temporary custody of Jacob for appellant-father from Friday evening to Sunday evening every other weekend. The matter was continued again on 2 May 2022 and 3 June 2022. In July 2022, the trial court entered another order, continuing every-other-weekend custody with appellant-father and custody otherwise with Maness, still without any acknowledgment of appellant-father's constitutionally protected parental status or Maness's lack of any familial or legal connection to Jacob. On 12 August 2022, the trial court entered another temporary custody order, extending appellant-father's custody of Jacob to Thursday evening through Monday morning every other weekend. The court also awarded joint legal custody to Maness and appellant-father and directed appellant-

father and Maness to custody mediation.

The next order included in the record on appeal was entered on 7 November 2022. In that order, from which this appeal is taken, the trial court made a number of findings of fact, concluded that appellant-father had "acted inconsistent with his constitutionally protected parental rights[,]" and decreed that "[p]ermanent custody will be set for trial" and "[t]he issue of permanent custody will be decided based on the best interests of the minor child."[2] Appellant-father timely appealed.

## II.  **Analysis**

Appellant-father argues that the trial court erred by concluding that he acted inconsistent with his constitutionally protected parental rights, and as a result, decreeing that it would employ a "best interest of the child" standard at any future permanent custody proceeding as between himself and Maness, a non-parent party. We agree.

### A. Appellate posture

As an initial point, we note that this appeal arises from a *temporary* custody order, and thus is interlocutory. This Court has addressed the immediate appealability of orders in such circumstances in several prior cases.

> An interlocutory order is one that does not determine the issues, but directs some further proceeding preliminary to a final decree. Normally, a temporary child custody order

---

[2] The trial court also concluded that Kornegay was unfit and acted inconsistent with her constitutionally protected status as a parent. Kornegay has not challenged the trial court's order and is not a party to this appeal.

is interlocutory and does not affect any substantial right which cannot be protected by timely appeal from the trial court's ultimate disposition on the merits. Temporary custody orders resolve the issue of a party's right to custody pending the resolution of a claim for permanent custody. The trial court's mere designation of an order as temporary is not sufficient to make the order interlocutory and nonappealable. *Rather, an appeal from a temporary custody order is premature only if the trial court: (1) stated a clear and specific reconvening time in the order; and (2) the time interval between the two hearings was reasonably brief.*

*Brewer v. Brewer*, 139 N.C. App. 222, 227–28, 533 S.E.2d 541, 546 (2000) (citations, quotation marks, brackets, and ellipses omitted) (emphasis added). *See also Graham v. Jones*, 270 N.C. App. 674, 678, 842 S.E.2d 153, 158 (2020) ("Generally, a child custody order is temporary if (1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings is reasonably brief, or (3) the order does not determine all the issues. If the order does not meet any of these criteria, it is permanent." (citations, quotation marks, brackets, and ellipsis omitted)). The order from which appellant-father appeals decreed that "[p]ermanent custody will be set for trial," but did not provide any timeframe for such a trial, much less "a clear and specific reconvening time." *Brewer*, 139 N.C. App. at 228, 533 S.E.2d at 546.

More importantly, this Court has repeatedly held that a trial court's order which "eliminates the fundamental right of . . . a parent, to make decisions concerning the care, custody, and control of [his] children, . . . affects a substantial right and [an]

appeal from [such an] order is properly before this Court pursuant to N.C. Gen. Stat. § 1-277(a)." *In re Adoption of Shuler*, 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (citations and internal quotation marks omitted); *see also Graham*, 270 N.C. App. at 682, 842 S.E.2d at 160. In his brief, appellant-father has appropriately cited N.C. Gen. Stat. § 1-277(a) as the basis for our appellate review, and furthermore this "appeal from a temporary custody order is [not] premature" under *Brewer*. 139 N.C. App. at 228, 533 S.E.2d at 546. Accordingly, we turn to the merits of appellant-father's arguments.

## B. Standard of review

> A trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence. The clear and convincing standard requires evidence that should fully convince. This burden is more exacting than the preponderance of the evidence standard generally applied in civil cases, but less than the beyond a reasonable doubt standard applied in criminal matters.
>
> The trial court's legal conclusion that a parent acted inconsistent[ ] with his constitutionally protected status as a parent is reviewed de novo to determine whether the findings of fact cumulatively support the conclusion and whether the conclusion is supported by clear and convincing evidence. The trial court's findings of fact are conclusive on appeal if unchallenged, or if supported by competent evidence in the record.

*In re I.K.*, 377 N.C. 417, 421–22, 858 S.E.2d 607, 611 (2021) (citations, quotation marks, and brackets omitted).

## C. Sufficiency of factual findings

"The liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by" the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "[T]he Due Process Clause does not permit a state to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73. Likewise, "North Carolina's recognition of the paramount right of parents to custody, care, and nurture of their children" is longstanding and deeply rooted. *Petersen v. Rogers*, 337 N.C. 397, 402, 445 S.E.2d 901, 904 (1994). "[P]arents normally love their children and desire not only what is best for them, but also a deep and meaningful relationship with them. Therefore, the decision to remove a child from the custody of a natural parent must not be lightly undertaken." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001). Accordingly, precedent provides that "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally[ ]protected paramount right of parents to custody, care, and control of their children must prevail." *Petersen*, 337 N.C. at 403–04, 445 S.E.2d at 905.

The primary import of the "*Petersen* presumption" lies in its impact on the burden of proof to be applied in a custody dispute between a parent and a non-parent party: "So long as a parent has this paramount interest in the custody of his or her children, a custody dispute with a non[-]parent regarding those children may not be determined by the application of the 'best interest of the child' standard." *Boseman v.*

*Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 503 (2010) (citing *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 531 (1997)). If the *Petersen* presumption—the presumption that a fit parent will act in the best interest of his or her child—is overcome, however, the provisions of N.C. Gen. Stat. § 50-13.2(a) will apply: "an order for custody of a minor child . . . shall award the custody of such child to such person, agency, organization, or institution as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2021); *Price*, 346 N.C. at 79, 484 S.E.2d at 534.

While "there is no bright line beyond which a parent's conduct [overcomes the *Petersen* presumption,] . . . . conduct rising to the 'statutory level warranting termination of parental rights' is unnecessary." *Boseman*, 364 N.C. at 549, 704 S.E.2d at 503 (citing and then quoting *Price*, 346 N.C. at 79, 484 S.E.2d at 534-35). "Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. . . . [and o]ther types of conduct, which must be viewed on a case-by-case basis, can also rise to this level[.]" *Price*, 346 N.C. at 79, 484 S.E.2d at 534–35. "A determination that a parent has forfeited this status must be based on clear and convincing evidence." *In re N.Z.B.*, 278 N.C. App. 445, 450, 863 S.E.2d 232, 236 (2021) (citations omitted).

The trial court did not find that appellant-father is an unfit parent for Jacob, or that he neglected or abandoned his son.[3] To the contrary, the trial court plainly had no concerns about appellant-father as a parent as the court initially awarded periods of custody of Jacob to appellant-father beginning on 24 December 2021, increased appellant-father's custody beginning in March 2022, continuing that custody at least once, and then once again increased appellant-father's custody on 12 August 2022. Thus, we turn to a case-specific consideration of the potentially pertinent findings of fact in the trial court's 7 November 2022 order, which include: that appellant-father "provided no financial support to the minor child since January of 2020"; that Kornegay and Jacob moved in with Maness in January 2020 at which point Kornegay allowed Maness to act as a parental figure to Jacob; that "unbeknownst to" appellant-father, Kornegay left Jacob with Maness in August 2020; that appellant-father had visitation with Jacob every other weekend from January to August 2020; that after learning in August 2020 of the existence of the purported temporary guardianship agreement between Kornegay and Maness, which appellant-father was told was intended to facilitate medical appointments for the child, appellant-father never contacted Maness about the agreement; that from August 2020 to January 2021, appellant-father was unable to contact Kornegay, did not

---

[3] A trial court's conclusion that one parent is unfit does not have any impact on the constitutionally protected parental rights of the other parent, who is still entitled to the benefit of the *Petersen* presumption. *See, e.g.*, *Brewer*, 139 N.C. App. at 231–32, 533 S.E.2d at 548.

attempt to contact Maness about Jacob's or Kornegay's whereabouts, and did not see Jacob; that Kornegay contacted appellant-father in January 2021 and informed him that she and Jacob were residing in South Carolina; and that appellant-father did not seek custody of Jacob until May 2021. Based on these findings of fact, the trial court concluded that appellant-father "withheld [his] care, love, and attention from the minor child through [his] actions while the child resided with" Maness; "failed to act as a reasonable parent when he had no communication from [Kornegay;] did not attempt communication with [Maness] as the last known location of the minor child, [when appellant-father's] mother was in communication with [Maness] until at least September [ ] 2020"; and thus "acted inconsistent with his constitutionally protected parental rights." The trial court did not note that it had placed Jacob in appellant-father's custody on a regular and increasing basis for almost a year prior to the entry of its order or explain how those rulings could be harmonized with its conclusion that appellant-father had acted inconsistent with his constitutionally protected parental rights less than three months following the court's increase of custody with appellant-father.

Upon our de novo review, we hold that the trial court's factual findings are insufficient to support its conclusion that appellant-father acted inconsistent with his constitutionally protected parental rights. These findings of fact boil down to appellant-father's failure to provide financial support for Jacob during a certain period of time and his failure, in the trial court's view, "to act as a reasonable parent"

when, upon being unable to reach Kornegay between September and December 2020, appellant-father did not attempt to contact Maness.

Given appellant-father's testimony that Kornegay had changed residences regularly since Jacob's birth in November 2018—including living with her grandparents, being apparently homeless, living with at least one boyfriend, living "in Sanford," spending several nights sleeping on appellant-father's couch, and moving in with Maness—in conjunction with his belief that Maness was simply acting as a babysitter for Jacob and had sought temporary guardianship to facilitate the child's medical care, we cannot conclude that it was not "reasonable" for appellant-father to act as he did in continuing to try to contact Kornegay over several months, rather than assuming that Kornegay had left Jacob in the care of Maness, a non-relative with no legal rights to the child who did not attempt to alert appellant-father or appellant-father's mother that the child was in her care.

Despite Kornegay's past housing instability, she had never before abandoned Jacob with a non-relative, having only left the child with appellant-father, and in this context, we disagree that a reasonable parent in appellant-father's position would assume that Kornegay had left her child behind and moved away or that Maness would maintain physical custody of appellant-father's child without contacting appellant-father, his family, or DSS. Once Kornegay responded to appellant-father's outreach in January 2021, appellant-father believed Jacob to be in her care out of state and formed a plan to visit his son. When DSS alerted appellant-father of the

actual state of affairs—that Maness had been keeping Jacob despite having no legal right to do so—appellant-father immediately followed the recommendation of DSS that he contact law enforcement in an attempt to retrieve his child and filed a report with DSS in an effort to regain custody of Jacob.

These circumstances are easily distinguishable from those present in cases where a natural parent who has never voluntarily relinquished custody of his child to a non-parent have been held to have risen to the level of being inconsistent with the constitutionally protected status of a parent:

- A father had numerous criminal convictions, a history of violating court orders, and only seven brief visits with his son during the two years of the child's life prior to the custody hearing in *Adams*, 354 N.C. at 58–59, 65, 550 S.E.2d at 500–01, 504.

- A mother lived a lifestyle that caused her to neglect her child and evidence suggested that she was involved in the murder of the child's father in *Speagle v. Seitz*, 354 N.C. 525, 528–29, 557 S.E.2d 83, 85 (2001), *cert. denied*, 536 U.S. 923 (2002).

Moreover, as noted above, the trial court had found appellant-father appropriate to have regular custody of his son for nearly a year, increasing those periods of custody less than three months before entering the order from which appellant-father appeals. None of the findings of fact made by the trial court pertain to any concern or change which arose or occurred during that time period. Nor did the trial court ever acknowledge that Maness kept Jacob in her physical custody for eight to nine months after his mother left Maness's residence—in the absence of any legal custody order—without contacting DSS, filing a custody complaint, or notifying

appellant-father or his mother, filing her custody complaint only after appellant-father learned that his child was not with Kornegay and took DSS-suggested action to regain custody of Jacob. Given the acts and omissions by Kornegay and Maness regarding where and with whom Jacob was residing between August or September 2020 and May 2021, we hold that the findings of fact in the trial court's order were insufficient to support a conclusion that appellant-father acted in a manner inconsistent with his constitutionally protected status as Jacob's natural parent. For this reason, application of "the best interest of the child" standard is inappropriate in this custody action.

## III. Conclusion

Accordingly, the trial court's 7 November 2022 order is reversed, and the case is remanded for further proceedings not inconsistent with this decision.

REVERSED AND REMANDED.

Judge WOOD concurs.

Judge ARROWOOD dissents by separate opinion.

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's holding that this interlocutory appeal can be decided on the merits. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362 (1950) (citation omitted). "As a general rule, interlocutory orders are not immediately appealable." *Williams v. Devere Constr. Co., Inc.*, 215 N.C. App. 135, 137 (2011) (citation omitted).

"The purpose of this rule is 'to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard.' " *Sharpe v. Worland*, 351 N.C. 159, 161 (1999) (quoting *Bailey v. Gooding*, 301 N.C. 205, 209 (1980)). This Court has noted that "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Veazey*, 231 N.C. at 363.

The majority is correct that orders awarding temporary custody are interlocutory and not appealable if "(1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings is reasonably brief, or (3) the order does not determine all the issues. . . . If the order does not meet any of these criteria, it is permanent." *See*

*Graham v. Jones*, 270 N.C. App. 674, 678 (2020) (cleaned up). Here, the trial court issued an order on 4 November 2022 determining, in relevant part, that appellant-father "acted inconsistent with his constitutionally protected parental rights[,]" "[p]ermanent custody will be set for trial[,]" and "[t]he issue of permanent custody will be decided based on the best interests of the minor child." Thus, the order directed a further proceeding be scheduled and decided using the best interests of the child standard. Further, it did not make any final custody determination. Additionally, there is a hearing on permanent custody referenced which suggests that the trial court directed another hearing to be scheduled and that the time between the hearings would have been reasonably brief but for this appeal. This is unlike the cases where the trial court enters multiple "temporary" custody orders which appear to be an attempt to avoid review. Thus, this order is interlocutory, and we must dismiss this appeal.

The majority notes that appellant-father cited N.C.G.S. § 1-277(a) as the basis for his right to appeal. However, he does not acknowledge the appeal as interlocutory, and he has not articulated how this appeal affects a substantial right. *See* N.C.R. App. P. 28(b)(4) ("When an appeal is interlocutory, the statement [of the grounds for appellate review] *must contain sufficient facts and argument* to support appellate review on the ground that the challenged order affects a substantial right." (emphasis added)). There are numerous cases that stand for the proposition that if a case is interlocutory and a person is relying on the fact that it affects a substantial right,

2

their brief must articulate the basis for this contention—this Court is not to articulate those grounds for them. *See, e.g.*, *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380 (1994); *Hoke Cnty. Bd. of Educ. v. State*, 198 N.C. App. 274, 277–78 (2009). The majority here appears to be trying to circumvent this line of cases. That effort in my opinion is violative of our Supreme Court's holding in *In Re Civil Penalty*. 324 N.C. 373, 384 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (citation omitted)).

In the case *sub judice*, the trial court did not terminate appellant-father's parental rights, nor did it make a permanent custody or guardianship determination in this order; the court explicitly ordered permanent custody to be determined at a later date. Because the order did not dispose of the case, the appeal is interlocutory. Appellant-father's statement of his grounds for appeal is thus insufficient as "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order[.]" *Jeffreys*, 115 N.C. App. at 380 (citation omitted); *see also Hoke Cnty. Bd. of Educ.*, 198 N.C. App. at 277–78 ("[A]ppellants must present more than a bare assertion that the order affects a substantial right; they must demonstrate *why* the order affects a substantial right." (emphasis in original) (citation omitted)). While appellant makes a bare bones assertion that his substantial rights are implicated, he makes no argument to support this statement.

Appellant-father's failure to do so subjects his appeal to dismissal for lack of jurisdiction.

As discussed above, this appeal is interlocutory, and this Court should dismiss the appeal. Deciding this case on the merits, though appellant-father merely cited a statute as the basis for this appeal, defies the purpose of the rule against interlocutory appeals, "procrastinate[s] the administration of justice[,]" and binds the other parties in this matter despite their patience to wait for a full adjudication below.